IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF ROSE SKY TOLBERT,
by and through Personal Representative,
THEODORE BARUDIN, ESQ., and
PHILLIP TOLBERT AND CHARLENE
SUINA, Individually,

    Plaintiffs,

  v.

            No. 19-CV-830 JB/LF

THE UNITED STATES OF AMERICA,

    Defendant.

**DEFENDANT UNITED STATES' PARTIAL MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendant United States of America, by its undersigned counsel, respectfully moves this Court to dismiss (1) the claim of negligent failure to transfer Plaintiff Charlene Suina to another medical facility; (2) the claims of negligent hiring, credentialing, privileging, training, and supervision of the medical personnel involved in the care of Plaintiff Suina and her daughter, Rose Sky Tolbert ("Baby Tolbert"); (3) the claim of an improperly equipped emergency room; and (4) the request for punitive damages and prejudgment interest.

The claims in the Complaint arise under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b). *See* Doc. 1 ¶ 46. The FTCA provides that "an action shall not be instituted upon a claim against the United States for money damages" unless the claimant first exhausts her administrative remedies. 28 U.S.C. § 2675(a). Here, the Complaint exceeds the scope of the administrative claims filed by Plaintiffs, which focus on the events that occurred *after* Dr. Gienia Lynch performed a cesarean section (hereafter, "C-section") to deliver Baby Tolbert. The only allegation in the

administrative claims relating to Dr. Lynch was her alleged failure to obtain consent to perform a procedure after the C-section. However, the Complaint alleges that Dr. Lynch was negligent in performing the C-section in the first place rather than transferring Plaintiff Suina to a different medical facility. *Id.* ¶¶ 3, 7-8. Because the administrative claims did not provide notice that Plaintiffs would allege a claim for negligent failure to transfer Plaintiff Suina, this claim was not properly exhausted and should be dismissed for lack of subject matter jurisdiction.

Plaintiffs' claims of negligent hiring, credentialing, privileging, training, and supervision, *id.* ¶¶ 13, 51-53, as well as breach of the standard of care in equipping the emergency room, *id.* ¶ 29, should also be dismissed for lack of subject matter jurisdiction. The United States has not waived its sovereign immunity as to these claims based upon the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a). Plaintiffs have failed to allege that any federal statute, regulation, or policy specifically prescribed a course of action for the employees at the Gallup Indian Medical Center ("GIMC") or the Indian Health Service ("IHS") with regard to these allegedly negligent actions or that the judgment they exercised lacked policy implications.

Finally, Plaintiffs' request for punitive damages and prejudgment interest should be dismissed since the United States has not waived its sovereign immunity as to these forms of relief.

Pursuant to D.N.M. LR-Civ 7.1(a), on August 12, 2020, government counsel notified counsel for Plaintiffs of the United States' intention to file this motion, and requested Plaintiffs' position on the motion. Plaintiffs' counsel has not responded and given the nature of the relief sought, Plaintiff's opposition to the United States' motion is presumed.

## MATERIAL JURISDICTIONAL FACTS

1.      On September 9, 2017, Plaintiff Suina, 35 weeks' pregnant, presented at GIMC with labor pain. Doc. 1 ¶ 2.

2.      Dr. Lynch performed an emergency C-section to deliver Baby Tolbert. *Id.* ¶ 5.

3.      After the C-section, Dr. Lynch performed a tubal ligation that Plaintiff Suina alleges exceeded the scope of her consent. *Id.* ¶ 20.

4.      While Plaintiff Suina underwent the procedure, Nurse Regina Williams allowed Baby Tolbert's grandmother to hold her. *Id.* ¶ 15.

5.      While under the care of her grandmother, Baby Tolbert stopped breathing. *Id.* ¶ 19.

6.      Despite the efforts of the GIMC personnel to resuscitate Baby Tolbert, including umbilical catheterization and placement of an endotracheal tube, Baby Tolbert was pronounced dead in the early morning of September 10, 2017. *Id.* ¶¶ 25-26, 33.

7.      On February 11, 2019, Plaintiffs Suina, Philip Tolbert, and the Estate of Baby Tolbert filed administrative claims on Standard Form 95 ("SF-95") with the Department of Health and Human Services. *See* Declaration of Sean Flaim, attached as Exhibit A; *see also* SF-95s for Plaintiffs Suina, Tolbert, and Baby Tolbert, attached as Exhibits A-1, A-2, and A-3, respectively.

8.      Section 8 ("Basis of Claim") of the SF-95 provides: "State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof." Section 10 ("Personal Injury or Death") provides: "State the nature and extent of each injury or cause of death, which forms the basis of the claim." *See, e.g.*, Ex. A-1 at 1.

9.      Plaintiffs Suina, Tolbert, and the Estate of Baby Tolbert each responded to Sections 8 and 10 with "See Exhibit A attached hereto" and provided attachments that were identical except for the heading identifying the claimant. Ex. A-1 at 1-6; Ex. A-2 at 1-6; Ex. A-3 at 1-6.

10.    Each attachment makes the following allegations with regard to Plaintiff Suina's

care up to her C-section:

Basis of Claim

Charlene Mary Suina and Philip Tolbert were thirty-five weeks pregnant with Baby
Rose Tolbert on September 9, 2017. Charlene Mary Suina went to Gallup Indian
Medical Center at 5:30 p.m., that evening because she didn't feel well and wanted
to be checked out. At 7:06 p.m. Ms. Suina was admitted to Labor and Delivery. She
told the providers that she "just doesn't feel right." Because of fetal tachycardia and
abdominal pain, the possibility of an emergent delivery was discussed. Ms. Suina
gave consent for a cesarean section and had previously consented to a bilateral tubal
ligation post-delivery.

Over 5 hours later, at 11:09 p.m., Ms. Suina is seen by Dr. Geinia [*sic*] Lynch, who
notes that Ms. Suina was still in pain. At 11:32 p.m., Dr. Lynch notes indicates for
a cesarean section. Ms. Suina is taken to the operating room. Mr. Tolbert is reached
while driving his semi-truck. He heads for Gallup.

The cesarean section is performed and baby Rose was easily delivered at 11:43 p.m.
. . . .

*See, e.g.*, Ex. A-1 at 3.

11.    The remaining factual allegations relate to Plaintiff Suina's tubal ligation

procedure, the care of Baby Tolbert, efforts to resuscitate Baby Tolbert after she became

unresponsive two hours after her birth, Baby Tolbert's autopsy, and Plaintiffs' counsel's efforts to

obtain medical records. *See, e.g.*, *id*. at 3-4. The SF-95s contend that Baby Tolbert's death occurred

"because her doctors breached the standard of care *from the moment of her birth* until this healthy

baby die[d] two hours later." *See, e.g.*, *id*. at 4 (emphasis added).

12.    In the next section entitled "Breaches in the Standard of Care," each attachment

lists various breaches of care by GIMC and its medical personnel. The sole allegation regarding

Dr. Lynch is the following: "Lastly, it was a breach of the standard of care for Dr. Lynch to remove

Charlene Mary Suina's fallopian tubes without her consent." All of these alleged breaches,

4

comprising eight bullet points and numerous sub-bullet points, relate to events occurring after the C-section. *See, e.g.*, *id*. at 4-5.

13.     Nowhere do the SF-95s or attachments allege any facts regarding Dr. Lynch's decision to perform the C-section at GIMC rather than transferring Plaintiff Suina to another facility with a neonatal intensive care unit. Nor do the administrative claims allege that failure to transfer Plaintiff Suina was negligent or fell below the standard of care. *See, e.g.*, *id*. at 3-6.

14.     Plaintiffs filed the Complaint on September 9, 2019. *See* Doc. 1.

15.     The Complaint alleges the following with respect to Dr. Lynch's decision to perform the C-section at GIMC rather than transferring Plaintiff Suina to another facility:

> Dr. Lynch made a choice not to transfer Ms. Suina for the obvious required c-section of her premature 35-week old baby regardless of the lack of any neonatal intensive care unit at GIMC, or any qualified specialized neonatal staff to care for a premature baby.
>
> Ms. Suina should have been transferred to a higher level of care for immediate c-section given her history, signs and symptoms, and the obvious need for a neonatal intensive care unit for the impending delivery of a pre-mature baby of a mother with gestational diabetes which carries an additional risk to the baby of lung immaturity, on top of the expected lung immaturity of simply being prematurely born.
>
> It was a breach of the standard of care for Dr. Lynch and all other health care providers involved in the pre-birth care of Ms. Suina and baby Rose to fail to transfer them to a higher level of care, where a safe and appropriate immediate delivery care and a neonatal intensive care unit were available.

*Id*. ¶¶ 3, 7-8.

16.     The Complaint further alleges that Dr. Lynch and the doctors involved in the care of Baby Tolbert, Drs. Greenholz, Leach, Rubaii, Alvarez-Colon, and Hamel, "were credentialed to be members of the Medical Staff of GIMC and granted privileges to perform specific medical conduct at GIMC on September 9 and 10, 2017, which caused their involvement in the care and treatment of baby Rose and her mother Charlene Suina." *Id*. ¶ 51. According to the Complaint,

these doctors' "gross negligence and/or reckless disregard for the safety of their patients" forms the basis of Plaintiffs' claims of "negligent credentialing and privileging." *Id*. ¶ 52.

17.     The Complaint alleges that the nursing staff at GIMC had inadequate training to care for Baby Tolbert, which contributed to her death. *Id*. ¶ 13.

18.     Plaintiffs also allege that the United States failed to properly staff and manage GIMC, contributing to Baby Tolbert's death. *Id*. ¶ 53.

19.     According to the Complaint, Dr. Robert Leach, who had inserted the endotracheal tube, left the emergency room to view an X-ray to confirm the tube's placement. Plaintiffs allege that "x-rays should be viewable in any emergency room," and that the "improperly equipped emergency room" was a "breach of the standard of care in properly operating GIMC." *Id*. ¶ 29.

20.     Plaintiffs seek both punitive damages and prejudgment interest. *Id*. ¶ 53; *id*. at 12.

## LEGAL STANDARD

The federal government is immune from liability absent its consent, and the terms of that consent define a court's jurisdiction to entertain a suit against the government. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Absent a specific waiver, sovereign immunity bars the suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Subject matter jurisdiction is a threshold issue. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). "Because the jurisdiction of federal courts is limited, there is a presumption against [the courts'] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) (internal quotation marks omitted). Accordingly, the FTCA's limited waiver of sovereign immunity is strictly construed. *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979).

If the grounds for dismissal for lack of subject matter jurisdiction are not set forth on the face of the complaint, the court may not presume the truthfulness of the complaint's factual

allegations but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Reference to such evidence outside the pleadings does not convert the motion to a Rule 56 motion unless resolution of the jurisdictional question is intertwined with the merits of the case. *Id.*

## A.    Exhaustion under the FTCA

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). This exhaustion requirement is jurisdictional and cannot be waived. *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016). Plaintiffs must "adhere closely to every rule and requirement of the FTCA, including the condition to exhaust their administrative remedies before appearing in federal court." *Estate of Cummings v. United States*, 651 F. App'x 822, 827 (10th Cir. 2016), *as clarified on reh'g*.

"The jurisdictional statute, 28 U.S.C. § 2675(a), requires that claims for damages against the government be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) (internal quotation marks omitted). The administrative claim must provide notice of the facts and circumstances underlying a claim. *Id.* at 853. The claim need not state a legal theory, however, since the claim "encompasses any cause of action fairly implicit in the facts." *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (internal quotation marks omitted).

The Tenth Circuit has not applied equitable doctrines to the FTCA's exhaustion requirement. *See Gabriel v. United States*, 683 F. App'x 671, 673 (10th Cir. 2017) (rejecting

argument that *United States v. Wong*, 135 S. Ct. 1625 (2015), abrogated the jurisdictional nature of FTCA's exhaustion requirement).

**B.     Discretionary Function Exception to the FTCA**

The FTCA preserves the United States' sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 808 (1984). "Application of this exception is therefore a threshold issue—a jurisdictional issue which precedes any negligence analysis." *Johnson v. United States*, 949 F.2d 332, 335 (10th Cir. 1991).

To determine whether the challenged conduct falls within the discretionary function exception, courts engage in a two-pronged analysis, known as the *Berkovitz* test, determining: (1) "whether the challenged conduct 'involves an element of judgment or choice,'" rather than "'a federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow'"; and if so, (2) "'whether that judgment is the kind that the discretionary function exception was designed to shield,'" *i.e.*, a judgment with policy implications. *Kiehn v. United States*, 984 F.2d 1100, 1102-03 (10th Cir. 1993) (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (alteration omitted)). "If the discretionary function exception applies to the challenged governmental conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the suit." *Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995).

8

Plaintiffs bear the burden of showing that the FTCA's discretionary function exception does not apply. *See Hardscrabble Ranch, LLC v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016). "To avoid dismissal of an FTCA claim under the discretionary-function exception, a plaintiff must allege facts that place its claim facially outside the exception." *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1130 (10th Cir. 1999).

**C.      Punitive Damages and Prejudgment Interest under the FTCA**

The FTCA provides: "The United States . . . shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. The Supreme Court has clarified that "§ 2674 bars the recovery only of what are *legally* considered 'punitive damages' under traditional common-law principles." *Molzof v. United States*, 502 U.S. 301, 312 (1992) (emphasis in original).

## ARGUMENT

**I.      Plaintiffs Have Failed to Exhaust Their Administrative Remedies with Respect to Their Claim of Negligent Failure to Transfer Plaintiff Suina to Another Facility.**

The Court should dismiss Plaintiffs' claim of negligent failure to transfer Plaintiff Suina to a different facility to give birth to Baby Tolbert. Plaintiffs' administrative claims focus on alleged negligence with respect to events *after* Plaintiff Suina's C-section. The SF-95s make no reference to any facts that would put the United States on notice of Plaintiffs' contention of negligence *before* the C-section. Because Plaintiffs failed to exhaust their administrative remedies with respect to the claim of negligent failure to transfer, the Court lacks subject matter jurisdiction over this claim and should dismiss it from this action.

The test under Section 2675(a) is "an eminently pragmatic one: as long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement." *Estate of Trentadue*, 397 F.3d at 852 (internal quotation

marks omitted). However, "simply because an agency is in possession of information relevant to a claim does not mean that the agency is aware of the claim itself." *Lopez*, 823 F.3d at 977. Hence, the administrative claim must allege sufficient facts to alert the government of the particular claim so that it can perform an investigation and have the opportunity to settle the claim. *Id.*

When an administrative claim fails to give notice of the facts and circumstances underlying the subsequent civil complaint, the Tenth Circuit has held that the claim is barred due to failure to exhaust. For example, in *Staggs v. United States*, the plaintiff's SF-95 alleged negligent management of the plaintiff's pregnancy and labor and negligent treatment of her daughter, resulting in her daughter's brain injury. 425 F.3d 881, 883 (10th Cir. 2005). Although the SF-95 alleged "at least ten deviations from the standard of care," it did not mention any lack of informed consent, nor did it allege facts showing that the plaintiff received a course of treatment without being informed of her options and the risks. *Id.* at 883-85. "[G]iven the length and factual specificity of [the plaintiff's] description of her claim without a mention of 'consent' or a suitable synonym, [the Department of Health and Human Services] could have reasonably concluded that a claim of lack of informed consent was not intended and that an investigation into lack of informed consent was unnecessary." *Id.* at 885. Accordingly, the Tenth Circuit affirmed the district court's conclusion that the claim was unexhausted for failure to raise it in the SF-95. *Id.*

Similarly, in *Benally v. United States*, the Tenth Circuit considered whether a plaintiff's administrative claims, which "narrowly focused on one event: her November 2008 surgery," exhausted her claim of negligence based on her post-operative care. 735 F. App'x 480, 482 (10th Cir. 2018). The plaintiff argued that her original administrative claim raised the post-operative negligence claim because it mentioned that after her hip replacement, the new hip failed and caused her severe pain and mobility issues. *Id.* at 485-86. The Tenth Circuit rejected this argument,

pointing out that her administrative claims "did not expressly convey that she intended to challenge the post-operative care that she received" and made "no assertion that post-operative negligence caused any of the alleged adverse events (e.g., the equipment failure or the mobility problems)." *Id*. at 486-87. Because the administrative claims "reflected a laser-like focus on how GIMC performed her surgery," the Tenth Circuit concluded that they failed "explicitly or implicitly . . . [to] present[] to the government any concerns related to her post-operative care." *Id*. at 487. Consequently, the plaintiff failed to exhaust the post-operative negligence claim. *Id*. at 488.

Here, as in *Staggs* and *Benally*, Plaintiffs' administrative claims provided insufficient notice to the government of a brand new claim alleged in the complaint. Plaintiffs submitted extremely detailed SF-95s describing the events that unfolded at GIMC on September 9-10, 2017, and listing numerous alleged breaches in the standard of care received by Plaintiff Suina and Baby Tolbert. However, nowhere in the SF-95s did Plaintiffs mention that any actions before Baby Tolbert's birth fell below the standard of care. Nor did Plaintiffs allege Plaintiff Suina should have been transferred to a facility with a neonatal intensive care unit to give birth. Instead, the facts recited in the SF-95s focus on the events that occurred after the C-section, including the allegedly botched tubal ligation and the failure to resuscitate Baby Tolbert. Moreover, all of the alleged breaches in the standard of care outlined in the lengthy bulleted list relate to these postnatal events, as evidenced by Plaintiffs' contention that Baby Tolbert's death resulted from negligence "from the moment of her birth." Ex. A-1 at 3.

Although Plaintiffs' SF-95s do mention that Dr. Lynch performed a C-section at GIMC, this reference to the C-section did not explicitly or implicitly convey their new contention that failure to transfer Plaintiff Suina to a different facility breached the standard of care. Tellingly, despite the length and specificity of the SF-95s, they lack any mention of the terms "transfer" or

"neonatal intensive care unit." Consequently, Plaintiffs' claim of negligent failure to transfer is not "fairly implicit in the facts" alleged in their administrative claims. *Lopez*, 823 F.3d at 976. Because Plaintiffs failed to exhaust this claim, the Court should dismiss it for lack of subject matter jurisdiction.

## II.     The Discretionary Function Exception Bars Plaintiffs' Claims of Negligent Hiring, Credentialing, Privileging, Training, and Supervision.

The Court also lacks subject matter jurisdiction over the Plaintiffs' claims alleging negligent hiring, credentialing, privileging, training, and supervision. Although Plaintiffs bear the burden to allege that the discretionary function exception does not apply to these claims, the Complaint does not meet this burden. Furthermore, because the government's decisions regarding hiring, credentialing, privileging, training, and supervision are inherently discretionary and involve judgments with policy implications, Plaintiffs cannot show that the discretionary function exception is inapplicable to these claims.

### A.     Plaintiffs Have Failed to Satisfy Their Burden to Allege a Specific and Mandatory Duty Violated by Defendant.

Because the discretionary function exception covers only those acts involving an element of judgment or choice, the Court must first determine if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. *Berkovitz*, 486 U.S. at 536. The Tenth Circuit further "requires the prescribed course of conduct to be specific and mandatory." *Aragon v. United States*, 146 F.3d 819, 822 (10th Cir. 1998). Plaintiffs bear the burden of pleading facts that place their claims facially outside the exception, including "identify[ing] what mandatory statutes, regulations or directives have allegedly been violated with specificity." *Hammonds v. United States*, Civ. No. 16-1230 GBW/KRS, 2018 WL 1399183, at *5 (D.N.M. Mar. 19, 2018) (citing *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539-1540 (10th Cir. 1992)).

Here, the Complaint is devoid of any allegation that "a federal statute, regulation, or policy specifically prescribe[d] a course of action for an employee to follow" in hiring, credentialing, privileging, training, or supervising the medical personnel involved in Plaintiff Suina and Baby Tolbert's care. *Garling v. United States Envtl. Prot. Agency*, 849 F.3d 1289, 1295 (10th Cir. 2017). Absent such an allegation, the Court "can only conclude that staffing decisions . . . were left to the discretion" of government officials. *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008).

Courts routinely hold that decisions relating to hiring, training, and supervision of government employees are inherently discretionary. *See, e.g.*, *Richman v. Straley*, 48 F.3d 1139, 1146 (10th Cir. 1995) (noting that "[d]ecisions regarding employment . . . are inherently discretionary"); *De Baca v. United States*, 399 F. Supp. 3d 1052, 1223 (D.N.M. 2019) ("The Court and Courts of Appeals have previously concluded that decisions about training are discretionary functions . . ."); *Garcia v. United States*, 709 F. Supp. 2d 1133, 1152 (D.N.M. 2010) ("[T]he Court finds that the training and supervision of police officers is conduct that the discretionary-function exception protects.").

Courts have also concluded that decisions regarding credentialing and privileging physicians involve discretion. *See, e.g.*, *Hurst v. United States*, No. CIV-17-189-RAW, 2018 WL 10529521, at *2 (E.D. Okla. Apr. 12, 2018) (holding that claims regarding privileging, retention, and supervision of Chickasaw National Medical Center physician were barred by the discretionary function exception because "those decisions remain a matter of judgment and choice with the health facility); *accord Begay v. United States*, No. CIV 15-0358 JB/SCY, 2016 WL 6394925, at *31 (D.N.M. Sept. 30, 2016) (noting that, "[a]s a rule, plaintiffs cannot generally challenge hiring and credentialing decisions, because they are discretionary," but identifying a "narrow" exception

where an Indian Health Manual policy prohibited credentialing a physician with a restricted license without director-level approval).

"[T]he burden under [Tenth Circuit] case law to present evidence of a discretion-constraining regulation or policy resides with the plaintiffs." *Sydnes*, 523 F.3d at 1185. Because Plaintiffs have not met this burden, they cannot satisfy the first step of the *Berkovitz* test.

### B.    The Personnel Decisions Challenged by Plaintiffs Are Grounded in Policy Considerations.

Under the second prong of *Berkovitz*, "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *United States v. Gaubert*, 499 U.S. 315, 324–25 (1991). The Court must "*presume* that a government agency's acts are grounded in policy when no statute, regulation, or policy sets forth a required course of conduct; the challenger must allege facts showing otherwise." *Ball v. United States*, No. 19-1161, — F.3d —, 2020 WL 4379867, at *5 (10th Cir. July 31, 2020) (citing *Gaubert*, 499 U.S. at 324-25 (emphasis in original)).

Here, Plaintiffs have not alleged that any statute, regulation, or policy set forth a required course of conduct with regard to hiring, credentialing, privileging, training, or supervising the GIMC medical staff. Consequently, the government's actions were presumptively grounded in policy, and Plaintiffs therefore cannot satisfy the second *Berkovitz* step.

Furthermore, the Tenth Circuit has made clear that personnel-related decisions "are precisely the types of administrative action the discretionary function exception seeks to shield from judicial second-guessing." *Richman*, 48 F.3d at 1147. Such decisions "are, as a class, the kind of matters requiring consideration of a wide range of policy factors, including budgetary constraints, public perception, economic conditions, individual backgrounds, office diversity,

experience and employer intuition." *Sydnes*, 523 F.3d at 1186 (internal quotation marks omitted). "Choosing how to evaluate these various policy considerations, determining which to give more weight to, and ultimately deciding whether a particular individual with a certain skill-set and temperament will help an agency fulfill its mission all involve sensitive policy judgments, and an employer or supervisor must decide which blend of skills will best aid the agency in performing its legally-prescribed duties." *Id.*; *see also Tilga v. United States*, No. CV 14-256 JAP/SMV, 2015 WL 12661930, at *13 (D.N.M. June 12, 2015) (noting that courts have "generally held that decisions relating to hiring, training, and supervision of employees usually involve policy judgment of the type Congress intended the discretionary function exception to shield" (internal quotation marks omitted)); *Garcia*, 709 F. Supp. 2d at 1151 (holding that training employees "involves substantial policy considerations" because "[t]raining costs money," requiring agencies to balance training needs against budgetary constraints).

In the medical context, decisions regarding the credentialing and privileging of physicians require policy considerations such as "budgetary constraints, the need to assure public safety, the degree of potential harm to patients, the extent to which the [physician] had deviated from the required standard of care in the past, whether prior problems of deficiencies had been addressed and to what extent, and the like." *Hudson v. United States*, No. 2:06-CV-01, 2008 WL 517009, at *8 (E.D. Tenn. Feb. 25, 2008); *see also Chrispen v. United States*, No. CV 7:16-132-KKC, 2017 WL 2990286, at *4 (E.D. Ky. July 13, 2017) (holding that deciding how to credential a physician or verify her competence "requires policy judgments, which are the kind of judgments Congress intended to shield from tort liability").

Decisions involving staffing of Indian Health Service ("IHS") facilities in particular also implicate policy considerations that require the weighing of resources, needs, and mission. IHS, in

partnership with American Indian and Alaska Native people, must fulfill its mission to raise their physical, mental, social, and spiritual health to the highest level; however, the goal of ensuring comprehensive, culturally acceptable personal and public health services must be balanced with limitations on resources, personnel, and other factors such as geography and demand. As a result, the difficulty of recruiting and retaining physicians to serve the Navajo Area is longstanding and well documented. *See, e.g*., U.S. Gov't Accountability Off., GAO-18-580, Indian Health Service: Agency Faces Ongoing Challenges Filling Provider Vacancies 17-18 (2018), *available at* https://www.gao.gov/assets/700/693940.pdf (last visited Aug. 10, 2018). Given the difficulty IHS has in retaining physicians to serve in the Navajo Area, "IHS' local procurement officials thus must weigh a variety of financial, social, organizational, and logistic considerations" when deciding whether to retain particular physicians. *Begay*, 2016 WL 6394925, at *30; *see also Archambault v. United States*, 82 F. Supp. 3d 961, 965 (D.S.D. 2015) (holding that the staffing of an IHS health clinic "is grounded in economic, social, or political policies" because of "finite resources" requiring that staffing decisions "be made in an effort to maximize the effectiveness of the agency").

The decisions of government employees relating to the hiring, credentialing, privileging, training, and supervision of GIMC physicians are not only inherently discretionary, but they are also susceptible to financial, social, and policy considerations. Because Plaintiffs cannot satisfy either the first or second *Berkovitz* prongs with respect to these claims, the United States has not waived its sovereign immunity and is entitled to the protection of the discretionary function exception. The Court should dismiss these claims for lack of subject matter jurisdiction.[1]

---

[1] Plaintiffs may argue that they should be entitled to discovery of the credentialing and privileging files of GIMC medical personnel to respond to this motion. However, such files are protected from disclosure pursuant to the quality assurance privilege set forth in 25 U.S.C. § 1675. *See, e.g*.,

### III.     The Discretionary Function Exception Bars Plaintiffs' Claim That GIMC Breached the Standard of Care by Improperly Equipping Its Emergency Room

Plaintiffs also fail to meet their burden to show that the discretionary function exception does not bar their claim that the GIMC emergency room lacked proper equipment. Plaintiffs have failed to identify any mandatory and specific directives that constrained GIMC's discretion in determining how to equip its emergency room. Moreover, the hospital's decisions about where to distribute its equipment are inherently discretionary and implicate numerous policy considerations.

Plaintiffs bear the burden to allege facts showing that the discretionary function exception does not apply to their improper equipment claim, yet they have not identified any mandatory federal statutes, regulations, or policies dictating how GIMC should outfit its emergency room. Accordingly, they have failed to establish under the first prong of *Berkovitz* that such decisions are nondiscretionary. Where, as here, there are no mandatory and specific directives governing the challenged conduct, the Court must "presume that a government agent's discretionary actions are grounded in policy, and it is up to the challenger to allege facts showing that the actions were actually not policy-oriented." *Hardscrabble Ranch*, 840 F.3d at 1222 (citing *Gaubert*, 499 U.S. at 324-25). Plaintiffs cannot rebut the *Gaubert* presumption and overcome the second *Berkovitz* prong.

Courts routinely recognize that "[a] decision regarding a governmental entity's selection of equipment and materials is a discretionary function." *Johnson v. United States*, No. CV129051GAFJEMX, 2014 WL 12572914, at *5 (C.D. Cal. Mar. 14, 2014) (citing cases). For

---

*Parker v. United States*, No. 8:18CV123, 2020 WL 729211, at *8 (D. Neb. Feb. 13, 2020) (holding that "records emanating from IHS' credentialing and privileging review fit squarely within the medical quality assurance privilege"); *Soto v. United States*, No. 13-CV-2359-BAS DHB, 2014 WL 4704594, at *4 (S.D. Cal. Sept. 22, 2014) (holding that "the entirety of [the Southern Indian Health Council's] quality assurance file is privileged under 25 U.S.C. § 1675"). The Court should therefore deny any request to discover these credentialing and privileging files.

example, in *Fang v. United States*, the Ninth Circuit considered whether the decision how to allocate emergency medical equipment such as cervical collars and backboards at National Park stations was a discretionary function. 140 F.3d 1238, 1242 (9th Cir. 1998). The court held that "decisions regarding the equipment to be kept at the various stations . . . are fully protected by the discretionary function exception to the FTCA" because resource constraints required park administrators to "exercise their own policy-based judgment and discretion to determine how best to allocate available resources throughout the various park locations." *Id*. Similarly, in *De Baca v. United States*, the District of New Mexico considered whether the Forest Service's decision not to have fire engines at a work site was discretionary. 399 F. Supp. 3d at 1210. This Court held that the decision implicated various policy considerations, including "how best to use [Forest Service] monetary resources" and "the benefits of additional tools and equipment." *Id*. at 1211 (internal quotation marks omitted).

GIMC's decision as to where to place medical equipment is also a discretionary function. Given the limited resources at GIMC's disposal, deciding where to locate medical equipment involves balancing various policy considerations, including what staff members might need the equipment most frequently, how to facilitate access by other staff members with less frequent needs, the need for the equipment to be available for consultations with specialists, and the desire to keep emergency room traffic to a minimum. Although Plaintiffs may disagree with GIMC's decision, "[w]hen the government performs a discretionary function, the exception to the FTCA applies regardless of 'whether or not the discretion involved be abused.'" *Redmon v. United States*, 934 F.2d 1151, 1157 (quoting 28 U.S.C. § 2680(a)).

Plaintiffs have failed to "overcome the discretionary function exception by pleading facts sufficient to demonstrate a clear waiver of sovereign immunity." *Daigle*, 972 F.2d at 1538.

Because the Court lacks subject matter jurisdiction in the absence of such a waiver, the Court should dismiss the claim regarding lack of proper equipment in the emergency room.

**IV.     The Court Lacks Jurisdiction over Plaintiffs' Request for Punitive Damages and Prejudgment Interest.**

Although the Complaint requests both punitive damages and prejudgment interest, Doc. 1 ¶ 53; *id.* at 12, neither punitive damages nor prejudgment interest is available under the FTCA, *see* 28 U.S.C. § 2674.

Here, Plaintiffs contend that the government "should be subject to punitive damages for its utter indifference in properly staffing and managing the Indian Health Service Hospitals." Doc. 1 ¶ 53. The Supreme Court has interpreted "punitive damages" in reference to state common law principles, *i.e.*, damages intended to punish a defendant for intentional or egregious misconduct. *Molzof*, 502 U.S. at 312. Therefore, under the FTCA, "damages awarded for 'aggravating circumstances' may not be awarded if their basis is the degree of a defendant's culpability." *Beller v. United States*, 296 F. Supp. 2d 1277, 1283 (D.N.M. 2003) (striking request for damages multiplier for aggravating circumstances under New Mexico's wrongful death statute). Because Plaintiffs seek damages that are punitive in nature based on allegedly egregious misconduct, the Court lacks jurisdiction over this demand as well as the request for prejudgment interest.

<u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests an Order of this Court dismissing the following for lack of subject matter jurisdiction: (1) the claim of negligent failure to transfer; (2) the claims of negligent hiring, credentialing, privileging, training, and supervision; (3) the claim of breach of the standard of care in equipping the GIMC emergency room; and (4) the request for punitive damages and prejudgment interest.

Respectfully Submitted,

JOHN C. ANDERSON
United States Attorney


*/s/ Elizabeth M. Martinez 8/18/2020*
ELIZABETH M. MARTINEZ
CHRISTINE LYMAN
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 224-1469 | (505) 224-1532
elizabeth.martinez@usdoj.gov
christine.lyman@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2020, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.


*/s/ Elizabeth M. Martinez 8/18/2020*
ELIZABETH M. MARTINEZ
Assistant United States Attorney