IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF ROSE SKY TOLBERT,
by and through Personal Representative
THEODORE BARUDIN, ESQ., and
PHILLIP TOLBERT and CHARLENE SUINA, Individually,

    Plaintiffs,

v.                                                                   CIVIL NO. 1:19-CV-00830-JB/LF

THE UNITED STATES OF AMERICA,

    Defendant.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S PARTIAL
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

      COME NOW Plaintiffs, by and through their attorneys of record, Curtis & Co. Law Firm, and hereby respond in opposition to Defendant United States' Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 50). Plaintiffs state as follows:

**INTRODUCTION**

      Defendant United States has moved to dismiss Plaintiffs' claims for (1) negligent failure to transfer Plaintiff Charlene Suina to another medical facility; (2) negligent hiring, credentialing, privileging, training, and supervision of the medical personnel involved in Plaintiffs' care; (3) an improperly equipped emergency room; and (4) punitive damages and prejudgment interest. Defendant's Motion should be denied, as Plaintiffs have appropriately exhausted their administrative remedies and the United States has waived its sovereign immunity for Plaintiffs' claims.  Plaintiffs have a claim for medical negligence against Defendants, not "negligent failure to transfer."  Defendant's attempt to recategorize Plaintiffs' claims is inappropriate.  Defendant is clearly on notice of the pre-delivery and post-delivery allegations of

1

medical negligence which caused personal injury and the wrongful death of baby Rose Sky Tolbert within hours of her birth. Plaintiffs met all requirements for exhausting the required administrative remedies adherent to a Federal Tort Claims Act restricted case against a federal actor, and immunity for Defendant's medical negligence has been waived. Plaintiffs recognize that punitive damages and pre-judgment interest are currently prohibited under the FTCA but have preserved in their Complaint the inherent unfairness of these prohibitions, public policy disincentives created by their inclusion in law, and the unconstitutionality of the provisions and the FTCA in general.

## AUTHORITY and ARGUMENT

### I.   LAW REGARDING A RULE 12(B)(1) MOTION TO DISMISS

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted). As the party invoking federal jurisdiction, the plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise by motion the defense of the court's "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based*." Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

Here, Defendant United States' Rule 12(b)(1) Motion is a "challenge to the actual facts upon which subject-matter jurisdiction is based." Accordingly, this Court does not presume only the truthfulness of Plaintiffs' allegations, but has wide discretion to reference evidence outside the pleadings.

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. See *Ruiz v. McDonnell*, 299 F.3d at 1180; *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). But when the attack is aimed at the jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

*Alto Eldorado Partners v. City of Santa Fe*, 2009 U.S. Dist. LEXIS 47158, 2009 WL 1312856, at *8-9 (D.N.M. 2009) (citations omitted).

There is no dispute that the Federal Tort Claims Act, 28 U.S.C. § 1346(b) confers subject matter jurisdiction upon the Federal Courts to hear Plaintiffs' claims of medical negligence. Defendant received notice of Plaintiffs' claims of medical negligence during both pre-delivery and post-delivery events concerning the birth and death of baby Rose Sky Tolbert in their timely filed SF-95 as required by 28 U.S.C. §2675(a). This Court has extensively reasoned and ruled concerning the Federal Court's subject matter jurisdiction to judge whether Defendant negligently hired/credentialed Defendant's doctors in *Begay v. United States*, No. CIV 15-0358 JB/SCY, 2016 U.S. Dist. LEXIS 139063 at *85, 2016 WL 6394925 (D.N.M. Sept. 30, 2016); and it is presumed, the Court will follow its opinion herein as well and find that these claims do not fall under the discretionary-function exception to the FTCA. Again, Defendant must properly operate its hospital, and subject matter jurisdiction exists for that claim. Should Defendant, or any of its doctors state they are not negligent because they had to go to the

radiology suite to view the x-ray taken to check the placement of the endotracheal tube after intubation of baby Rose, instead of viewing the film from the ER, this would be the fault of the institution, and no excuse for Defendant for the delay in recognizing the misplacement of baby Rose's ETT during resuscitation.  As is stated above, punitive damage and pre-judgment interest are understood to be currently without subject matter jurisdiction under the FTCA, but the issue is raised and preserved in the Complaint.

## II.   LAW REGARDING THE FEDERAL TORT CLAIMS ACT AND WAIVER OF THE UNITED STATES' SOVEREIGN IMMUNITY

"It is 'axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.' *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed. 2d 580 (1983)." *Begay v. United States*, No. CIV 15-0358 JB/SCY, 2016 U.S. Dist. LEXIS 139063, at *55, 2016 WL 6394925 (D.N.M. Sept. 30, 2016). The Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity for claims arising out of the injuries caused by the negligence of governmental employees acting within the scope of their employment and confers exclusive jurisdiction upon Federal District Courts in this medical negligence case. The FTCA contains several exceptions to its waiver of immunity, drawing a boundary "between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

## III.   LAW REGARDING EXHAUSTION OF ADMINISTRATIVE CLAIMS

A plaintiff must adhere to procedural requirements in suing the United States under the FTCA before a district court can exercise jurisdiction. 28 U.S.C. § 2675 provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

This statute "requires that claims for damages against the government be presented to the appropriate agency by filing (1) a written statement sufficiently describing the injury to enable the agency begin its own investigation, and (2) a sum certain damages claim." *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852 (10th Cir. 2005) (quoting *Bradley v. United States*, 951 F.2d 268, 270 (10th Cir. 1991).

"A claim should give notice of the underlying facts and circumstances '**rather than the exact grounds upon which plaintiff seeks to hold the government liable**.'" *Staggs v. United States ex rel. Dep't of Health and Human Servs.,* 425 F.3d 881, 884 (quoting *Estate of Trentadue* at 853) (emphasis added). "When the United States waives its immunity from suit, a court should neither narrow the waiver not 'take it upon [itself] to extend the waiver beyond that which Congress intended." *Smith v. United States*, 507 U.S. 197, 203 (1993) (quoting *United States v. Kubric*k, 444 U.S. 111, 117-118, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979))." *Begay v. United States*, No. CIV 15-0358 JB/SCY, 2016 U.S. Dist. LEXIS 139063 *55, 2016 WL 6394925 (D.N.M. Sept. 30, 2016).

> **A. Defendant received notice of Plaintiffs' claims of medical negligence during both pre-delivery and post-delivery events concerning the birth and death of baby Rose Sky Tolbert in Plaintiffs' timely filed SF-95s, as required by 28 U.S.C. §2675(a).**

Here, Defendant had notice and opportunity to investigate Plaintiffs' medical negligence claims against Defendant. Plaintiffs properly presented and timely submitted SF-95s presented facts that would clue a legally trained reader to the medical negligence issues in this case.

5

Defendant received notice of Plaintiffs' claims of medical negligence during both pre-delivery and post-delivery events concerning the birth and death of baby Rose Sky Tolbert in their timely filed SF-95 as required by 28 U.S.C. §2675(a). Plaintiffs are not required to state specific legal theories, rather must simply allege facts that would clue a legally trained reader to the theory's applicability.

Defendant is improperly narrowing the scope of Plaintiffs' medical negligence claims by attempting to sequester a specific paragraph in the Complaint to redefine it as a "*claim*" for "negligent failure to transfer Plaintiff Charlene Suina to another medical facility." Defendant is improperly categorizing a fact attendant to the pre-delivery negligent conduct as a "claim." The Court is well-aware that Plaintiffs' *claim* against Defendant is for medical negligence. Plaintiffs' SF-95s reference problems pre-delivery of baby Rose. Defendant was medically negligent in its numerous failures to properly care for Plaintiff Charlene Suina, including the failure to carry out what its providers had identified as a high-risk, emergency delivery, for more than five hours. If Defendant was not capable or equipped to carry out the emergency delivery, or was too busy to do so for **five hours**, the providers should have transferred Ms. Suina to another facility.

Defendant United States had notice of the facts and circumstances surrounding Plaintiffs' medical negligence claims, as set forth in Plaintiffs' SF-95s. As Plaintiffs' SF-95s explain, Charlene Suina was 35-weeks pregnant when she went to GIMC. She arrived at 5:30 PM that evening, but was not admitted to Labor and Delivery until 7:06 PM. Ms. Suina presented with fetal tachycardia and abdominal pain, and her providers discussed an **emergency delivery**, to which Ms. Suina consented. Despite the stated and known need for an **emergency delivery much earlier in the evening**, Ms. Suina was not taken to the operating room until after 11:32 PM, almost **five hours later**. These facts indicate medical negligence in the care and treatment

provided by Defendant to Plaintiff Charlene Suina prior to the C-section delivery of baby Rose Sky Tolbert. (*See* Plaintiffs' SF-95s, Docs. 50-2, 50-3, 50-4).

The medical records attached to Plaintiffs' SF-95s likewise show Defendant's pre-delivery knowledge of the mother's gestational diabetes, prior placental abruption, and the overall high-risk nature of her pregnancy, showing the breach in the standard of care to wait more than five hours to do an emergency C-section to deliver baby Rose Sky Tolbert.  Given these facts of a high-risk pregnancy in the medical records provided to Defendant, with the clear statements in SF-95s, Defendant was provided facts that support medical negligence claims, pre-delivery, against it.

As further detailed in Plaintiffs' SF-95s, when Plaintiffs attempted to obtain medical records from GIMC, they were told that they had absolutely no records. Then, GIMC claimed the records were "checked out." When GIMC finally provided medical records to Plaintiffs, the records were sparce and a number of key records were missing completely, such as nurse flow sheets, anesthesia records, and the code sheet for baby Rose Tolbert. Defendant cannot withhold documents from Plaintiff while simultaneously claiming that Plaintiff did not provide it facts to give it proper notice of Plaintiffs' claims in the SF-95s.  If Defendants are asserting there should be more facts or other facts in the medical records provided, that have been lost or destroyed by Defendant, obviously they cannot profit from their omission or wrongdoing.

Defendant's Motion attempts to make a distinction between negligence occurring *before* as opposed to *after* Plaintiff Suina's C-section. As clearly outlined in the SF-95s, Plaintiffs' claims encompass the events that took place from the time Plaintiff Charlene Suina arrived at GIMC at 5:30 PM on September 9, 2017, through the wrongful death of baby Rose Sky Tolbert on September 10, 2017 at 2:31 AM and beyond, to include the unconsented to and irreversible

sterilization procedure performed on Ms. Suina. (*See* Plaintiffs' SF-95s, Docs. 50-2, 50-3, 50-4). Accordingly, Defendant has sufficient notice that it should investigate negligent conduct pre-delivery and post-delivery and in fact, throughout the entire time period of Charlene Suina's stay at GIMC.

In Plaintiffs' list of "Breaches in the Standard of Care" contained in the SF-95s, Plaintiffs explicitly state that "Gallup Indian Medical Center breached the standard of care for properly operating a hospital by allowing physicians, nurses, and employees to practice at this egregiously substandard level. It has breached numerous standards of care and provided astonishingly abysmal medical care." Taken together with Plaintiffs' factual statements in the SF-95s, this statement additionally puts Defendant on notice of claims relating to negligent care pre-delivery and post-delivery. The final paragraph of Plaintiffs' SF-95 further notes that "The claims brought against these providers are for medical negligence . . . [and] intentional spoliation."

The United States had sufficient notice of the claim of medical negligence to conduct a full investigation into the pre-delivery care received by Plaintiff Charlene Suina, which, given the known need for an emergency C-section, and the fact of her high risk pregnancy, and the reality no such C-section was done for over 5 hours; would include, given proper medical care, consideration to transfer her and the baby for delivery at another medical facility, if Defendant failed to have the resources, equipment, capability or time to deliver her immediately.  There is no "claim" for failure to transfer," whatever that is.  The claim is for medical negligence and Defendant should be well aware it is for both the pre-delivery and post-delivery period. Defendant's Motion to Dismiss should be denied.

## IV. LAW REGARDING THE FTCA DISCRETIONARY FUNCTION EXCEPTION

The United States' Motion to Dismiss next focuses on the "discretionary function" exception to the FTCA found in 28 U.S.C. § 2680(a). This section states that the United States' sovereign immunity is preserved for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

There is no dispute here that the Medical Staff and Governing Body responsible for the hiring, credentialing and privileging of physicians at the Gallup Indian Medical Center ("GIMC"); that the involved physicians are federal employees; that they were acting within the scope of their employment; and that GIMC itself, an Indian Health Service ("IHS") facility, is operated by a federal agency. See 28 U.S.C. § 1346(b); 25 U.S.C. § 1661 (Department of the Indian Health Service established within the Public Health Service to carry out the responsibilities of the United States to provide health care services to Indians and Indian Tribes).

The remaining question relevant to establish this Court's subject matter jurisdiction over Plaintiffs' claims against the United States is whether Defendant's conduct is protected by sovereign immunity because it is a discretionary function. The United States Supreme Court has developed a two-prong analysis to determine when the FTCA discretionary function exception applies. *Berkovitz v. United States*, 486 U.S. 531 (1954); *Domme v. United States*, 61 F.3d 787 (10th Cir. 1995). First, the allegedly negligent acts or omissions must be discretionary in nature, involving "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). Second, the government conduct must be "based on considerations of public policy." *Id*. at 323.

In applying the first prong of the *Berkovitz* framework, district courts are to inquire into the nature of the conduct. The governmental act or omission complained of is subject to the discretionary function exception only if it involves judgment or choice. The status of the actor is not relevant in determining whether the exception applies; the focus is on the conduct. *Gaubert* at 322; *Domme* at 789. Conduct that does not involve an element of judgment or choice on the part of the government employee cannot be discretionary conduct because there is no element of judgment or choice if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Gaubert* at 322 (quoting *Berkovitz* at 536). Where a statute, regulation, or policy prescribes or proscribes the conduct at issue, "the employee has no rightful option but to adhere to the directive." *Berkovitz* at 536. In this case, the negligent acts and omissions violated requirements which were specific and explicitly mandated by federal law and policy. Therefore, the discretionary function exception does not apply.

If the conduct is found to be discretionary, then the district court must go on to determine whether the discretionary choice or judgment is based on considerations of public policy. The government is protected from liability where the action challenged involves a permissible exercise of policy judgment. *Domme* at 790. The question is not the subjective intent of the government agent or employee, but whether the decision is susceptible to a public policy analysis. *Aragon v. United States*, 146 F.3d 918, 827 (10th Cir. 1998).

### A. Defendant United States has waived its sovereign immunity for Plaintiffs' negligent hiring, credentialing, privileging, training, and supervision claim

Neither of the two prongs of the discretionary function analysis are met by the conduct and omissions of the Medical Staff and GIMC alleged here. The discretionary function exception does not bar Plaintiffs' claims against the United States for the conduct of the Medical Staff and Governing Body in credentialing and privileging the GIMC providers to treat patients as a

10

physician in the hospital and to perform medical procedures. In the exercise of reasonable care, GIMC knew or should have known that its providers failed to meet minimum qualifications, endangering GIMC patients, and directly leading to the death of Baby Rose Tolbert. In the years following the granting of privileges to GIMC physicians, GIMC and its employees failed in their duty to monitor and proctor the physicians' work to verify their current competence to perform the care for which privileges were granted.

### 1. The United States was subject to a specific and mandatory course of conduct, therefore the "discretionary function" exception does not apply

Contrary to the United States' characterization of the decision to credential and privilege GIMC providers as an exercise of discretion, the credentialing process in an Indian Health Facility is strictly regulated by federal statutes, regulations, and policies. These laws, regulations, and policies impose mandatory requirements which allow no room for discretion. Privileging is based on objective evidence of minimum qualifications to treat certain illnesses. Privileging requires documentation and verification that the provider has met minimum education, training, and experience requirements to perform the medical procedures required in a particular department of the hospital. Additional objective requirements must be met and verified before the Medical Staff and Governing Body can authorize a provider to perform certain specialized clinical procedures on patients.

There is no discretion to weigh individual backgrounds, diversity, or other tangible or intangible factors not specified in the regulations and policy which govern the decisions. Federal policy mandates that both the procedures specified to investigate the physician's competence, and the substantive criteria which establish competence be applied uniformly to all applicants without regard to other factors. The same mandatory regulations and policies govern the credentialing of every physician whether they come to the hospital through a personal service

11

contract or have been hired directly by the hospital. It is the hospital's Medical Staff, in compliance with mandatory regulations and policies governing credentialing and privileging, which must authorize that physician to treat patients. Without this authorization, a physician cannot see a patient or provide any treatment in the GIMC.

### a. *Overview of the federal regulatory structure governing privileging:*

A preliminary review of the complex regulatory structure which governs the credentialing and privileging of physicians in Indian Hospitals is helpful to understand how specific aspects of this federal policy controlled the negligent conduct at issue here. Gallup Indian Medical Center is a facility of the Indian Health Service, an agency within the federal Department of Health and Human Services. 25 U.S.C. § 1660. The IHS operates health facilities throughout the country, including hospitals, which provide health care to the Indian community under federal government auspices. GIMC is a federal health program administered directly by the federal Indian Health Service. 25 U.S.C. § 1603. It provides care to eligible Indians and to other patients as set forth in 25 U.S.C. § 1680c. The Indian Health Service is authorized by statute to contract with individuals and organizations to provide health care services, as well as to directly employ health care providers. 25 U.S.C. § 1638c. Health care providers, including physicians, who are hired pursuant to a contract are deemed to be federal employees for purposes of the Federal Tort Claims Act. *Id.* A physician's application to treat patients at an Indian Service hospital or other facility, however, will not be approved by the Secretary of Public Health unless the Hospital "has implemented appropriate policies and procedures to reduce the risk of malpractice" and "has reviewed and verified the professional credentials, references, claims history, fitness, professional review organization findings, and license status of its physicians" prior to credentialing and privileging a physician to treat the

facility's patients. 42 U.S.C. § 233h.

The Federal Credentials and Privileging Policy ("*Federal Policy*") adopted by the Department of Health and Human Services in 1995, and revised in 1996, states that its purpose is "to standardize the basic requirements and processes [for credentialing and privileging] in all Indian Health Service facilities." *Federal Policy,* § 3-1.1(B), Attached as Exhibit 1, p. 1. The policy provides that "[c]linical privileges shall be granted only in accordance with the criteria and procedures required." *Federal Policy*, § 3-1.5, attached as Exhibit 1, p. 11. Finally, all physicians "must be credentialed and privileged PRIOR to providing care." [emphasis in the original]. *Federal Policy,* § 3-1.2(A), attached as Exhibit 1, p. 6.

Indian Health Service hospitals are required (the Policy uses the word "shall") "to maintain credentialing and privileging policies and procedures consistent with Medicare Conditions of Participation (federal regulations) and meet the standards of a national accrediting organization." *Federal Policy,* § 3-1.2(B), attached as Exhibit 1, p. 6. The *Federal Policy* strictly limits the granting of privileges to those areas of medical practice "commensurate with the training, experience, qualifications, and proficiency of the applicant." *Federal Policy,* § 3-1.2 (C), attached as Exhibit 1, p. 6.

Finally, each Hospital's Medical Staff are required to develop and have approved by the Hospital's Governing Body "authoritative guidelines for the medical staff" which include both substantive criteria for the granting of particular privileges to physicians and the specific procedures which must be followed in verifying a physician's licensure, education, training, experience, and other qualifications for privileges in each area of practice. *Federal Policy,* § 3-1.1 (C)(7), attached as Exhibit 1, p. 2; 42 CFR § 482.22(C) and (c)(6) (Medical Staff must

adopt and enforce bylaws that include "criteria for determining the privileges to be granted to individual practitioners and a procedure for applying the criteria").

Although there may be some limited discretion in the criteria adopted by the Medical Staff and Governing Body to fill any gaps in the federal regulations and policy, once those bylaws are adopted, the procedures and substantive criteria govern both the procedures which must be followed to grant credentials and privileges and the substantive criteria which must be applied to physicians applying for privileges in a particular department and for permission to perform particular clinical procedures.

### b. *Application to the precise government conduct challenged by Plaintiffs:*

In determining whether the discretionary conduct exception to federal government tort liability applies, our courts first focus on the precise governmental conduct challenged. Here, Plaintiffs claim that the United States was negligent both in the procedures it followed and in the substantive standards of competency it applied in credentialing providers to treat patients at GIMC. It was these acts and omissions by the United States, its agencies and employees, which Plaintiffs allege were negligently performed and which negligence, in turn, was a cause of the injuries to Plaintiffs, including the wrongful death of baby Rose Sky Tolbert. Had the mandatory process and mandatory criteria for credentialing and privileging physicians been followed, Plaintiffs would not have suffered the injuries from improper treatment.

As this Court has found in *Begay v. United States*, No. CIV 15-0358 JB/SCY, 2016 U.S. Dist. LEXIS 139063 at *85-92, 2016 WL 6394925 (D.N.M. Sept. 30, 2016), Indian Health Service faces decisions whether to hire and credential doctors to work in their hospitals. IHS has a policy and procedure manual called the Indian Health Manual that sets out the requirements for how to make hiring and credentialing decisions. Unlike *Begay*, no

14

discovery or credentialing information has been provided by Defendants. Nothing in Defendant's initial disclosures set out any information about Defendant's doctors or nurses, and further discovery is mandatory to properly answer this issue in the case. While Plaintiffs have shown there are actually many specific regulations that mandate behavior for credentialing of physicians to work in hospitals, to know whether they were met will require discovery. For the Defendant to state that all hiring and credentialing or privileging is a discretionary function excepting the case from the FTCA waiver of the government's sovereign immunity is impossible under *Begay*. Medical licensure information, restrictions of licenses, removal of privileges, etc. are not easily accessible for IHS doctors because a New Mexico Medical license is not required, only licensure in some state is required.

      The pediatrician in this case, Dr. Alvarez-Colon appears to be licensed at some point in Puerto Rico, but never New Mexico. Dr. Leach, an emergency room doctor of osteopathy appears to have had licenses in New Mexico, Iowa, Nevada, Wisconsin and Illinois. Gienia S. Lynch, M.D., the OB/GYN in the case has no license in New Mexico and instead chooses to be licensed in Illinois, who does not appear to have any license to prescribed controlled substances in Illinois or anywhere since 2008 and who has a substantial seven-figure Verdict against her in Illinois. Dr. Rubaii appears to be licensed in Colorado, but parts of the applications or attestations are redacted and unreadable. Plaintiffs must have some discovery to determine whether a negligent hiring/credentialing and privileging case exists, although the prior cases show that there are circumstances under which no discretionary function exists, and so this Motion to Dismiss must be denied.

### 2. The mandatory federal policies allowed no room for considerations of policy.

The second prong of the *Berkovitz* test need not be applied here. Where statutes, regulations, and federal policy specifically prescribes or proscribes the conduct at issue, as is the case here, "the employee has no rightful option but to adhere to the directive." *Berkovitz* at 536. Policy considerations do not intrude into the application and enforcement of these standards by the United States.

### B. Defendant United States has waived its sovereign immunity for Plaintiffs' "Failure to Properly Operate the Hospital" claim.

Again, Defendant's Motion conflates the specific factual problem identified in the Complaint – the improperly equipped emergency room – with Plaintiffs' "*Failure to Properly Operate the Hospital*" claim. As the Complaint explains, the failure to have required equipment in the GIMC emergency room "would be a breach of the standard of care in **properly operating GIMC**" Complaint at ¶ 7 (emphasis added). Just as there are specific breaches that evidence Plaintiffs' medical negligence claims, the failure to have a properly equipped emergency room is a specific breach evidencing Plaintiffs' failure to properly operate the hospital claim. Plaintiffs do not have a *claim* for "improper equipment." Defendant's Motion at p. 17. The specific breach here is the failure to have required equipment in the emergency room, where the claim itself is for the failure to properly operate the hospital.

Accordingly, Defendant's entire argument on this issue is misapplied and irrelevant. There is not a claim that would fall under the "discretionary function" analysis. The claim is one for the failure to properly operate the hospital, for which the FTCA waives the United States' sovereign immunity, and which Defendant United States has not addressed in its Motion. The Court must deny Defendant's Motion on this issue.

**V.      The FTCA's prohibition on prejudgment interest and punitive damages awards against the United States is unconstitutional.**

Defendant United States should be subject to punitive damages for its utter indifference in properly staffing and managing its Indian Health Service hospitals, including GIMC, which contributed to cause the wrongful death of baby Rose Sky Tolbert. 28 U.S.C. § 2674 contains a prohibition on interest prior to judgment or for punitive damages and is an unconstitutional limitation on the United States' liability.

## CONCLUSION

WHEREFORE, Plaintiffs request the Court deny Defendant United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction in its entirety, and allow all of Plaintiffs' claims to proceed to trial.

Respectfully Submitted,

*Attorneys for Plaintiffs*
CURTIS & CO.
215 CENTRAL AVENUE NORTHWEST
THIRD FLOOR
ALBUQUERQUE, NM 87102
T  505-243-2808         F  505-242-0812
lisa@curtislawfirm.org
julia@curtislawfirm.org

*Electronically signed,*
*/s/ Lisa K. Curtis*
Lisa K. Curtis
Julia G. Coulloudon

## CERTIFICATE OF SERVICE

   I hereby certify that on the 1st day of September 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

U.S. Attorney's Office, District of New Mexico
Elizabeth Martinez, Esq.
P.O. Box 607
Albuquerque, NM 87103
*Attorney for Defendant USA*

                */s/ Julia G. Coulloudon, Esq.*
                Julia G. Coulloudon, Esq.