IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILLIP TOLBERT and THEDORE W.
BARUDIN, *Personal Representative for the
Estate of Rose Sky Tolbert*,

    Plaintiffs,

vs.                                                                                                                       No. CIV 19-0830 JB/LF

GALLUP INDIAN MEDICAL CENTER;
DEPARTMENT OF HEALTH AND HUMAN
SERVICES; THE UNITED STATES OF
AMERICA; GIENIA LYNCH; JANET M.
GREENHOLZ; SAFIA RUBAII; GILBERTO
ALVAREZ-COLON; ROBERT LEACH;
TERENCE H. HAMEL and REGINA
WILLIAMS,

    Defendants.

# ORDER[1]

**THIS MATTER** comes before the Court on Defendant United States' Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed August 18, 2020 (Doc. 50)("Motion"). The Court held a hearing on the Motion on September 16, 2020. See Clerk's Minutes at 1, filed February 22, 2021 (Doc. 58). The primary issues are: (i) whether the Court should dismiss the negligent failure-to-transfer claim, because Plaintiffs Phillip Tolbert and Theodore W. Barudin, the personal representative for Rose Sky Tolbert's estate (collectively, "the Plaintiffs"), have not exhausted their administrative remedies under the Federal Tort Claims Act, 28 U.S.C. § 2675(a) ("FTCA"); (ii) whether the court should dismiss the claims of negligent hiring, credentialing, privileging, training, and supervision of medical personnel, because the discretionary function

---

[1]This order disposes of Defendant United States' Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed August 18, 2020 (Doc. 50). The Court will issue a Memorandum Opinion at a later date more fully detailing its rationale for the decision.

exception bars these claims; (iii) whether the Court should dismiss the improperly equipped emergency room claim, because the discretionary function exception bars this claims; (iv) whether the Court should deny the Plaintiffs' punitive damages and prejudgment interest request, because 28 U.S.C. § 2674 prohibits the Court from awarding punitive damages or prejudgment interest. The Court concludes that: (i) the Court will not dismiss the Plaintiffs' allegations regarding the United States' failure to transfer the mother and baby to a different hospital, because the Plaintiffs' Standard Form 95s ("SF-95") provided the United States with adequate notice; (ii) the Court will dismiss the negligent training claim, and dismiss in part the negligent credentialing and privileging claims under the discretionary function exception; (iii) the Court will dismiss the emergency room equipment claim, because selecting emergency room equipment involves discretionary policy decisions; and (iv) the Court will dismiss the Plaintiffs' request for punitive damages and prejudgment interest, because 28 U.S.C. § 2674 prohibits the Court from awarding such damages against the United States in FTCA cases.

  In the Motion, the Defendant United States of America asks the Court:

> to dismiss (1) the claim of negligent failure to transfer Plaintiff Charlene Suina to another medical facility; (2) the claims of negligent hiring, credentialing, privileging, training, and supervision of the medical personnel involved in the care of Plaintiff Suina and her daughter, Rose Sky Tolbert ("Baby Tolbert"); (3) the claim of an improperly equipped emergency room; and (4) the request for punitive damages and prejudgment interest.

Motion at 1-2.

  First, the Court concludes that the Plaintiffs' SF-95s provided sufficient notice to the United States of the Plaintiffs' claims; therefore, the Court has jurisdiction over these claims because the Plaintiffs have exhausted their administrative remedies. See 28 U.S.C. § 2675(a); Attachment A to SF-95 Re: Phillip Tolbert, Individually at 3, filed August 18, 2020 (Doc. 50-3)("Attachment to Tolbert SF-95"); Attachment A to SF 95 Re: Charlene Mary Suina and Phillip

Tolbert, as Personal Representatives for the Estate of Rose Tolbert at 3, filed August 18, 2020 (Doc. 50-4)("Attachment to Estate SF-95"); Transcript of Hearing at 21:21-22:6 (taken September 16, 2020), filed September 28, 2020 (Doc. 60)(Curtis)("Tr."). The FTCA requires prospective plaintiffs to "have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a). An SF-95 "claim should give notice of the underlying facts and circumstances 'rather than the exact grounds upon which [the claimant] seeks to hold the government liable.'" Staggs v. U.S. ex rel. Dep't of Health & Hum. Servs., 425 F.3d 881, 884 (10th Cir. 2005)(alterations in original)(quoting Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 853 (10th Cir. 2005)). The United States insists that the Plaintiffs' "administrative claims did not alert a legally trained reader that Plaintiffs would assert negligence for any acts preceding Baby Tolbert's delivery." Defendant United States' Reply to its Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction at 1, filed September 10, 2020 (Doc. 55)("Reply"). The United States therefore asks the Court to dismiss "the claim of negligent failure to transfer . . . ." Motion at 1. The Plaintiffs' SF-95s both state, however, that the decedent's mother, "Charlene Mary Suina went to Gallup Indian Medical Center at 5:30 p.m." Tolbert SF-95 Attachment at 3; Estate SF-95 Attachment at 3 (same). According to the SF-95s, "baby Rose [wa]s pronounced dead" at 2:31 a.m., "because her doctors breached the standard of care from the moment of her birth until this healthy baby dies two hours later." Tolbert SF-95 Attachment at 4; Estate SF-95 Attachment at 4 (same). These SF-95 statements provided the United States with notice that the applicable time period for the Plaintiffs' negligence claims was from the time Suina arrived at the hospital until the baby's death. See Staggs v. U.S. ex rel. Dep't of Health & Hum. Servs., 425 F.3d at 884; Tolbert SF-95 Attachment at 4; Estate SF-95 Attachment at 4. The Complaint contains the following discussion of the United States' decision not to transfer Suina:

- 3 -

>        Ms. Suina had a prior history of c-section and placental abruption, which was known by Dr. Lynch.  Dr. Lynch made a choice not to transfer Ms. Suina for the obvious required c-section of her premature 35-week old baby regardless of the lack of any neonatal intensive care unit at GIMC, or any qualified specialized neonatal staff to care for a premature baby.
>
>        . . . .
>
>        Ms. Suina should have been transferred to a higher level of care for immediate c-section given her history, signs and symptoms, and the obvious need for a neonatal intensive care unit for the impending delivery of a pre-mature baby of a mother with gestational diabetes which carries an additional risk to the baby of lung immaturity, on top of the expected lung immaturity of simply being prematurely born.
>
>        It was a breach of the standard of care for Dr. Lynch and all other health care providers involved in the pre-birth care of Ms. Suina and baby Rose to fail to transfer them to a higher level of care, where a safe and appropriate immediate delivery care and a neonatal intensive care unit were available.
>
>        . . . .
>
>        Dr. Greenholz should know the level of care available at GIMC and should have transferred the baby to a higher level of care for neonatal intensive unit care and treatment if she was unable to provide the needed specialization to baby Rose, given her limitation as a general pediatrician.  Dr. Greenholz's failures were a breach of the standard of care which contributed to cause baby Rose's wrongful death.

Complaint ¶¶ 3, 7-8, 12, at 2-4.  The SF-95s contain many of these facts; for example, they note that delivery occurred when Suina was "thirty-five weeks pregnant."[2]  Tolbert SF-95 Attachment at 3; Estate SF-95 Attachment at 3 (same).  Moreover, the Plaintiffs clarify that there "is no 'claim' for failure to transfer, whatever that is.  The claim is for medical negligence and Defendant should be well aware it is for both the pre-delivery and post-delivery period."  Plaintiffs' Response in Opposition to Defendant's Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction at 8,

---

[2]"Labour that starts before 37 weeks is considered premature.  If [a] baby is born early, he or she may need special care in [a] hospital."  You and Your Baby at 35 weeks pregnant, National Health Service (July 17, 2018),  https://www.nhs.uk/pregnancy/week-by-week/28-to-40-plus/35-weeks/.

filed September 1, 2020 (Doc. 53)(no citation for quotation)("Response").  The FTCA does not require a plaintiff's complaint to mirror identically the SF-95.  See 28 U.S.C. § 2675(a); Staggs v. U.S. ex rel. Dep't of Health & Hum. Servs., 425 F.3d at 884.  Further, the Plaintiffs provide notice of their medical negligence claim in the SF-95s; the statement in the Complaint regarding the transfer bolsters their negligence claim.   As the Court noted at the hearing, the SF-95s here are "about as detailed as any SF-95" that the Court has seen.  Tr. at 6:23-25 (Court).  Forbidding the Plaintiffs from including information about a possible transfer would penalize improperly the Plaintiffs because they have "gone to the trouble of doing such a detailed complaint . . . ."  Tr. at 6:15-20 (Court).  Accordingly, the Court will consider the Complaint's discussion of the Defendants' alleged "fail[ure] to transfer [Suina and baby Rose] to a higher level of care, where a safe and appropriate immediate delivery care and a neonatal intensive care were available."  Complaint ¶ 7, at 3.

Second, the Court dismisses in part the negligent hiring, credentialing, privileging, training, and supervision claims, because these claims fall under the FTCA's discretionary function exception.  See 28 U.S.C. § 2680(a).  The FTCA instructs:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  The discretionary function instruction "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).  "In examining the nature of the challenged conduct, a court must first consider whether the action is a

matter of choice for the acting employee." Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536 (1988)("Berkovitz").  Second, "assuming the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield."  Berkovitz, 486 U.S. at 536.  Specifically, the Court evaluates whether the conduct implicates public policy decisions that Congress sought to protect "from judicial second guessing."  Begay v. United States, No. CIV 15-0358 JB/SCY, 2016 WL 6394925, at *30 (D.N.M. Sept. 30, 2016)("Begay")(Browning, J.)(citing Berkovitz, 486 U.S. at 536).

At the hearing, Court stated that it would dismiss "the claims of negligent hiring,[3] credentialing, privileging, training, and supervision[4] of the medical personnel," because "as a general rule they fall into . . . categories that are subject to the discretionary function exception." Tr. at 71:2-7 (Court).  See Begay, 2016 WL 6394925, at *31 ("Not all, most, or generic hiring and credential decisions can be brought against the United States.  As a rule, plaintiffs cannot generally challenge hiring and credentialing decisions, because they are discretionary.").  After evaluating closely the Complaint and the briefing, the Court dismisses the negligent training claim, and dismisses in part the negligent credentialing and privileging claims.  With respect to negligent supervision, the Complaint alleges that the hospital's nursing staff:

---

[3]The United States asks the Court to dismiss the Plaintiffs' "claims of negligent hiring . . . ." Motion at 1.  The Plaintiffs do not raise a negligent hiring claim in the Complaint.  See Complaint ¶¶ 1-58, at 1-12.  Yet, at the hearing, the Court asked the Plaintiffs whether their "claims cover negligent hiring," and the Plaintiffs agreed.  Tr. at 36:11-14 (Court, Curtis).  To the extent that the Plaintiffs raise a negligent hiring claim, it is dismissed without prejudice.

[4]The United States asks the Court to dismiss the Plaintiffs' "claims of negligent . . . supervision." Motion at 1.  The Plaintiffs do not raise a negligent supervision claim in the Complaint.  See Complaint ¶¶ 1-58, at 1-12.  Yet, at the hearing, when the Court asked the Plaintiffs whether their "claims cover negligent . . . supervision," the Plaintiffs agreed.  Tr. at 36:11-14 (Court, Curtis).  To the extent that the Plaintiffs raise a negligent supervision claim, it is dismissed without prejudice.

> were either not properly trained to manage the medical care of a premature baby, such as baby Rose that requires neonatal intensive care unit level care and/or were negligent in the care of pre-mature baby Rose. Additionally, given their failure in training and/or in the provision of medical care to baby Rose, they contributed to cause her wrongful death.

Complaint ¶ 13, at 4. In the Response, the Plaintiffs do not discuss in detail whether the discretionary function exception applies to the negligent training claim, but focus instead on the negligent hiring and credentialing claims. See Response at 9-16. Applying the Berkovitz test, the Court concludes that the discretionary function exception bars the Plaintiffs' negligent training claim, because: (i) the manner in which a hospital trains its nurses "appears to be a function that carries with it a large measure of discretion," Garcia v. United States, 709 F. Supp. 2d 1133, 1151 (D.N.M. 2010)(Browning, J.), and the Plaintiffs have not identified any statutes or regulations to the contrary, see Response at 9-16; Reply at 8-9 ("Plaintiffs have provided no language regarding training that GIMC must provide to its medical staff."); and (ii) a hospital's training of its nurses "involves substantial policy considerations," Garcia v. United States, 709 F. Supp. 2d at 1152. Consequently, the Court dismisses the Plaintiffs' negligent training claim. See Tr. at 71:2-7 (Court). See also Complaint ¶ 13, at 4.

> The Complaint also details the following negligent credentialing and privileging claims:
>
> Defendants Lynch, Greenholz, Leach, Rubaii, Alvarez-Colon, and Hamel were credentialed to be members of the Medical Staff of GIMC and granted privileges to perform specific medical conduct at GIMC on September 9 and 10, 2017, which caused their involvement in the care and treatment of baby Rose and her mother Charlene Suina.
>
> . . . .
>
> Plaintiffs are prohibited from publicly accessing information on GIMC's credentialing and privileging of the above physicians until after the filing of the lawsuit, and as such the only good faith basis Plaintiffs have to assert negligent credentialing and privileging of Defendant physicians is the gross negligence and/or reckless disregard for the safety of their patients shown by their conduct in treating baby Rose and her mother Charlene Suina.

Complaint ¶¶ 51-52, at 10.  Here, as in Begay, the Court holds that "the discretionary-function exception does not apply to IHS conduct hiring and credentialing . . . under I.H.M. 3-1.4(C)(5)." Begay, 2016 WL 6394925, at *32.  The Indian Health Manual ("IHM") § 3-1.4(C)(5) states:

> Members of the medical staff and others who must apply for clinical privileges must hold an active and unrestricted State license, certification, or registration, as applicable, to practice in their professional field. The term "unrestricted" means that there are no restrictions, special considerations, periods of monitoring, or probationary requirements associated with license, certification, or registration that restricts or inhibits the ability of the practitioner to practice his/her profession in the specialty or clinical area for which the practitioner is being hired.  This includes any stipulations that may have a potentially significant adverse impact on patients, the medical staff, or the efficiency of the facility.
>
> In general, providers with any restrictions on any State license, certification, or registration will not be granted medical staff membership or clinical privileges. However, exceptions may be granted on a case-by-case basis by the Area Director.

I.H.M. 3-1.4(C)(5).  Similarly, the IHM provides that "all licensed practitioners who provide care at IHS facilities must maintain current licensure and credentials, and be proficient of their granted privileges . . . ."  I.H.M. 3-1.2(A).  These "mandatory . . . regulations" control the privileging and credentialing of IHS doctors, because they require specifically that the IHS verify that its doctors possess valid licenses.  United States v. Gaubert, 499 U.S. 315, 328 (1991).  When discussing the licensure issue, the Plaintiffs argue that they "must have some discovery to determine whether a negligent hiring/credentialing and privileging case exists . . . ."  Response at 15.  The Court agrees with the Plaintiffs, because "[t]he Court deems the discretionary-function . . . exception[] jurisdictional issues on which the Tenth Circuit would direct the Court to permit discovery."  De Baca v. United States, 403 F. Supp. 3d 1098, 1128 (D.N.M. 2019)(Browning, J.).  Nonetheless, "as a rule, plaintiffs cannot generally challenge . . . credentialing decisions."  Begay, 2016 WL 6394925, at *31. This general rule applies to the Plaintiffs' other privileging and credentialing allegations.  See Complaint ¶¶ 51-52, at 10; Response at 12-14.  The remaining statutes and

regulations to which the Plaintiffs cite relating to these claims do not avoid the discretionary-function exception, because they involve "the consideration of alternatives, the weighing of factors, or the application of policy priorities bounded by practical concerns," such that "the language leaves to the decisionmaker's discretion how best to fulfill" the regulations. Clark v. United States, 695 F. App'x 378, 385-86 (10th Cir. 2017). See Response at 12-14 (collecting statutes and regulations). Accordingly, the Plaintiffs' negligent credentialing and privileging claims may proceed on a limited basis under the I.H.M.'s mandatory licensure requirements. See I.H.M. 3-1.2(A); I.H.M. 3-1.4(C)(5); Tr. at 71:2-7 (Court). See also Response at 15 (arguing that the "Plaintiffs have shown there are actually many specific regulations that mandate behavior for credentialing of physicians"). All remaining privileging and licensing claims are dismissed. See Complaint ¶¶ 51-52, at 10; Tr. at 71:2-7 (Court).

Third, the Court will dismiss the Plaintiffs' claims regarding the emergency room equipment. See Complaint ¶ 29, at 7. The United States argues that the Plaintiffs have not met "their burden to show that the discretionary function exception does not bar their claim that the . . . emergency room lacked proper equipment." Motion at 17. The Plaintiffs respond that the United States "conflates the specific factual problem identified in the Complaint -- the improperly equipped emergency room -- with the Plaintiffs' '*Failure to Properly Operate the Hospital*' claim." Response at 16 (citing Complaint ¶ 7, at 3)(emphasis in Response). The Complaint alleges that a "baby's x-rays should be viewable in any emergency room, and a physician leading the code and leaving the baby to view an x-ray would be evidence of an improperly equipped emergency room which would be a breach of the standard of care in properly operating" a hospital. Complaint ¶ 29, at 7. The Plaintiffs, however, do not identify any "mandatory statutes or regulations," controlling the United States' conduct in equipping an emergency room. United States v. Gaubert, 499 U.S. 315, 328 (1991). Moreover, selection of an emergency room's equipment is "precisely

the sort of policy-based decision protected by the discretionary function exception." Black Hills Aviation, Inc. v. United States, 34 F.3d 968, 976 (10th Cir. 1994).  See Boyle v. United Techs. Corp., 487 U.S. 500, 511 (holding that selecting military equipment's design feel under the discretionary exception, because it involves "the balancing of many technical, military, and even social considerations . . ."). Accordingly, the Court dismisses this claim.

Finally, the Court dismisses the Plaintiffs' request for punitive damages and prejudgment interest. See Complaint ¶ 53, at 10.  The Plaintiffs insist that the United States "should be subject to punitive damages for its utter indifference in properly staffing and managing the Indian Health Service Hospitals, including Gallup Indian Medical Center which contributed to cause the wrongful death of baby Rose Sky Tolbert." Complaint ¶ 53, at 10. The Court disagrees, because the FTCA prohibits the Court from subjecting the United States to punitive damages.  See 28 U.S.C. § 2674.   The FTCA states, in pertinent part, that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."  28 U.S.C. § 2674.  See Molzof v. United States, 502 U.S. 301, 312 (1992)(holding that § "2674 bars the recovery only of what are *legally* considered 'punitive damages' under traditional common-law principles")(emphasis in original)(no citation for quotation); Beller v. United States, 296 F. Supp. 2d 1277, 1279 (D.N.M. 2003)(Johnson, J.)(explaining that "the Government's liability is subject to the limitation that it is not liable for punitive damages").  At the hearing, the Court the explained that it would "find the" FTCA "to be constitutional even with its ban on punitive damages. I think Congress gets to make those decisions.  I don't think the Constitution has a whole lot to say about that issue." Tr. at 71:9-11 (Court).  Moreover, although the Plaintiffs argue that 28 U.S.C. § 2674 "is an unconstitutional limitation on the United States' liability," they devote just two sentences of their seventeen-page

brief to this argument, which, if the Court were to agree with, would have far ranging consequences.  See Response at 17.  The Plaintiffs neither cite which constitutional provision 28 U.S.C. § 2674 allegedly violates, nor provide any supporting case law.  See Response at 17.  Consequently, the Court dismisses the Plaintiffs' claims for punitive damages and prejudgment interest.  See Complaint ¶ 53, at 10; id. at 12 (no paragraph numbering)(requesting "pre- and post-judgment interest").

**IT IS ORDERED** that Defendant United States' Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction, filed August 18, 2020 (Doc. 50), is granted in part and denied in part.

                                                                               _____
                                                                               UNITED STATES DISTRICT JUDGE

*Counsel*:

Brandon W. Vigil
Law Office of Brandon W. Vigil
Albuquerque, New Mexico

-- and --

Julia Gabrielle Coulloudon
Laura Callanan
Lisa K. Curtis
Curtis & Co. Law Firm
Albuquerque, New Mexico
      *Attorneys for the Plaintiffs*

Fred Federici
  Acting United States Attorney
Elizabeth M. Martinez
Kimberly N. Bell
Christine Hyojin Lyman
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Defendant United States of America*