IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE ESTATE OF ROSE SKY TOLBERT,
by and through Personal Representative,
THEODORE BARUDIN, ESQ., and
PHILLIP TOLBERT AND CHARLENE
SUINA, Individually,

        Plaintiffs,

    v.
                                  No. 19-CV-830 JB/LF

THE UNITED STATES OF AMERICA,

        Defendant.

**UNITED STATES' NOTICE OF NON-APPEARANCE AND
MOTION TO QUASH OR FOR PROTECTIVE ORDER**

The United States moves pursuant to Rule 45(d)(3)(A) of the Federal Rules of Civil

Procedure to quash subpoenas served by Plaintiffs on the Acting Director of the Indian Health

Service ("IHS"), Michael Weahkee [1] ; the Chief of Staff of Gallup Indian Medical Center

("GIMC"); and the GIMC Administrator (collectively, the "Government Officials"). In the

alternative, the United States moves for a protective order pursuant to Federal Rule of Civil

Procedure 26(c).

The Court should quash these subpoenas as an undue burden under Fed. R. Civ. P.

45(d)(3)(A). Under the "apex doctrine," high-ranking officials can generally be deposed only upon

a showing of extraordinary circumstances. Such circumstances exist when the official has unique

personal knowledge of the plaintiff's claim and that information cannot be obtained through other

---

[1] As the United States has previously explained, RADM Michael D. Weahkee is no longer the
Senate-confirmed Director of the Indian Health Service. *See* Doc. 115 at 12 n.6 (explaining that
Elizabeth A. Fowler is the new Acting Director).

sources. Here, Plaintiffs cannot show that extraordinary circumstances exist as to any of the Government Officials to justify their depositions taking place.

Alternatively, regardless of whether the apex doctrine applies, the depositions sought by Plaintiffs should be barred or limited because they do not fit within the scope of discovery under Rule 26(b). Plaintiffs seek testimony on topics that are (1) protected from discovery pursuant to the IHS medical quality assurance statute, 25 U.S.C. § 1675; (2) relevant only to claims that the Court has already indicated it will dismiss; or (3) duplicative of other testimony already obtained by Plaintiffs. Therefore, good cause exists to protect the Government Officials from being deposed. *See* Fed. R. Civ. P. 26(c)(1).[2]

## RELEVANT FACTUAL BACKGROUND

### A.   The United States' Motion to Dismiss Based on the Discretionary Function Exception

1.      On September 9, 2019, Plaintiffs filed a Complaint alleging that the United States is liable pursuant to the Federal Tort Claims Act ("FTCA") for the death of their daughter at GIMC shortly after her birth. *See* Doc. 1.

2.      Plaintiffs asserted claims of negligent training of the nursing staff and negligent credentialing and privileging of the physicians involved in the care of Plaintiff Suina and Baby Tolbert. *Id*. ¶¶ 13, 51-52. Plaintiffs later clarified that they were also bringing claims of negligent hiring and supervision. *See* Doc. 117 at 6 nn.3,4.

3.      According to Plaintiffs, the United States "should be subject to punitive damages for its utter indifference in properly staffing and managing the Indian Health Service Hospitals." Doc. 1 ¶ 53.

---

[2] Pursuant to D.N.M.LR-Civ. 7.1(a), on July 8, 2021, Government counsel notified Plaintiffs' counsel of the United States' intention to file this motion. Plaintiffs are opposed.

4.      Plaintiffs further alleged that the FTCA is "unconstitutional" and "against public policy" because it "create[s] a disparity between the routinely substandard medical treatment available to members of the Navajo Nation and the guarantee of life accorded all Americans." *Id*. ¶¶ 54-55.

5.      On August 18, 2020, the United States filed a Partial Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 50), arguing, *inter alia*, that the discretionary function exception to the FTCA barred Plaintiffs' claims of negligent hiring, credentialing, privileging, training, and supervision and that punitive damages for egregious misconduct are unavailable under the FTCA. *See* Doc. 50 at 12-16, 19.

6.      On March 23, 2021, the Court entered an interlocutory Order (Doc. 117) disposing of the United States' Motion (Doc. 50). The Court indicated it would "issue a Memorandum Opinion at a later date more fully detailing its rationale for the decision." Doc. 117 at 1 n.1.

7.      In its Order, the Court dismissed the claims of negligent hiring, supervision, and training in their entirety. *Id*. at 6-7.

8.      The Court held that "the Plaintiffs' negligent credentialing and privileging claims may proceed on a limited basis under the [Indian Health Manual's ("IHM")] mandatory licensure requirements."[3] *Id*. at 9. Therefore, except to the extent that Plaintiffs alleged a violation of the IHM's mandatory licensure requirement, the Court dismissed their negligent credentialing and privileging claims. *See id*. at 8-9.

---

[3] The IHM sets forth guidelines for credentialing IHS medical providers. The licensure requirement states: "In general, providers with any restrictions on any State license, certification, or registration will not be granted medical staff membership or clinical privileges. However, exceptions may be granted on a case-by-case basis by the Area Director." IHM § 3-1.4(C)(5), *available at* https://www.ihs.gov/ihm/pc/part-3/p3c1/#3-1.4 (last visited July 9, 2021).

9.      In its Order, the Court also "dismisse[d] the Plaintiffs' request for punitive damages . . . because the FTCA prohibits the Court from subjecting the United States to punitive damages." *Id.* at 10 (citing 28 U.S.C. § 1674). Furthermore, the Court noted that it would "find the FTCA to be constitutional even with its ban on punitive damages" because "Congress gets to make those decisions." *Id.* (internal quotation marks omitted).

**B.      Plaintiffs' Motion to Compel Discovery**

10.      On November 20, 2020, Plaintiffs filed their First Motion to Compel (Doc. 84). Plaintiffs had requested information and documents relating to credentialing and employment files, as well as medical quality assurance records relating to Plaintiffs and other patients. The United States objected to these requests because they sought information protected by the IHS medical quality assurance statute, 25 U.S.C. § 1675; the Privacy Act, 5 U.S.C. § 522a; and the Health Insurance Portability and Accountability Act ("HIPAA") Privacy Rule, 45 CFR Parts 160 and 164. Plaintiffs also requested information and documents relating to other lawsuits, incidents, and claims at GIMC from the past ten years. The United States had objected to these requests as overbroad, unduly burdensome, and not proportionally related to the needs of this case because punitive damages are unavailable under the FTCA. *See generally* Doc. 99-1.

11.      Plaintiffs argued in their First Motion to Compel that they are entitled to credentialing files and other quality assurance records because an exception for "a criminal or civil law enforcement agency or instrumentality" applied to their discovery requests. *See* Doc. 84 at 5-6 (citing 25 U.S.C. § 1675(d)(1)(F)).

12.      At a motions hearing on June 15, 2021, the Court indicated that it would "have to study the statute a little bit" but was skeptical of the argument that the law enforcement exception

applied to Plaintiffs' counsel. *See* June 15, 2021 Hearing Transcript, attached as Ex. A, at 133:7-19; 137:7-13.

13.     The hearing was continued, and the Court has not yet ruled on the First Motion to Compel.

**C.     Plaintiffs' Motion to Extend Discovery**

14.     In the Joint Status Report and Provisional Discovery Plan (Doc. 28), Plaintiffs' witness list included the following individuals:

> 3.  GIMC Administrator responsible for policies and procedures, hospital bylaws and medical staff bylaws and procedures for the relevant time period; who is expected to testify to the policies and procedures that applied to the hiring and duties of the GIMC healthcare providers involving [*sic*] in baby Rose and Charlene Suina's medical care on September 9 and 10, 2017.

> 4. GIMC Chief of Staff or Credentialing Committee Chair regarding the credentialing and privileging of the healthcare providers for the relevant time period: who are [*sic*] expected to testify to the credentialing, privileging and personnel history of the healthcare providers involved in the medical care of baby Rose and Charlene Suina on September 9 and 10, 2017.

> 5. Michael Weahkeen [*sic*]- acting [*sic*] Director of the Indian Health Services who is expected to testify to the broader history of medical negligence at GIMC, the mortality rate for babies at GIMC, the medical malpractice lawsuit history for GIMC; peer review activities at GIMC or lack thereof, hiring practices at GIMC and quality measures in general at HIS hospitals, nationally.

Doc. 28 at 14-15.

15.     On March 10, 2021, Plaintiffs moved to extend discovery to take additional depositions, including those of "GIMC Administrator," "GIMC Chief of Staff," and "Michael Weahkeen [*sic*] – Acting [*sic*] Director of I.H.S." *See* Doc. 113 at 3. In their Reply, Plaintiffs explained that the "GIMC Administrator, Chief of Staff, and Acting Director of I.H.S. are administrative witnesses who must be deposed to explore" the remaining negligent credentialing and privileging claim. Doc. 119 at 7.

16.     On June 15, 2021, the Court granted Plaintiffs' Motion to Extend Discovery from the bench. *See* Ex. A at 107:1. However, the Court noted that the United States still had the right to challenge any deposition noticed by Plaintiffs by filing a motion for protective order. *Id*. at 107:15-23; *see also* Doc. 168 at 10.

**D.     The United States' Motion to Dismiss the Negligent Credentialing Claim**

17.     On May 14, 2021, the United States filed its Motion to Dismiss or Motion for Partial Summary Judgment on Plaintiffs' Negligent Credentialing Claim (Doc. 135).

18.     In its Motion, the United States noted that it had provided Plaintiffs with the licensure information for each of the six doctors whom they claim were negligently credentialed, and Plaintiffs had ample opportunity to question each doctor about his or her licensure status during their depositions. *See* Doc. 135 at 3-4.

19.     Dr. James R. Lisko, Chief of Staff at GIMC, provided a declaration attesting to the fact that each of the doctors had undergone the credentialing review required under the IHM and had active, unrestricted medical licenses as required under the IHM at the time of the incident alleged in the Complaint. *Id*. at 4; *see also* Doc. 135-10.

20.     In their Opposition, Plaintiffs did not contest the licensure status of any of the doctors. Rather, Plaintiffs argued that they needed additional discovery for their credentialing claim pursuant to Rule 56(d) in the form of the discovery responses at issue in their First Motion to Compel and the additional depositions sought in their Motion to Extend Discovery. *See generally* Doc. 139; *see also* Doc. 139-1 at 1.

21.     The Court has not yet ruled on the Motion to Dismiss or Motion for Partial Summary Judgment on Plaintiffs' Negligent Credentialing Claim (Doc. 135).

E.     **Plaintiffs' Notices of Depositions *Duces Tecum***

22.     On June 25, 2021, Plaintiffs served Government counsel with notices of depositions *duces tecum* and subpoenas for the GIMC Chief of Staff, GIMC Administrator, and IHS Acting Director Michael Weahkeen [*sic*] to testify at their depositions. *See* Notice and Subpoena for GIMC Administrator, attached as Ex. B; GIMC Chief of Staff, attached as Ex. C; Notice and Subpoena for IHS Acting Director, attached as Ex. D.

23.     Plaintiffs' counsel requested 7 hours of each witness's time. *See* Email from Julia Coulloudon, June 17, 2021, attached as Ex. E.

24.     Plaintiffs noticed the GIMC Administrator's deposition for July 28, 2021. *See* Ex. B at 1. The notice listed the following subjects for examination:

1.     Policies and procedures, hospital bylaws and medical staff bylaws and procedures for the relevant time period.

2.     Policies and procedures that applied to the hiring of the GIMC healthcare providers involved in Baby Rose Sky Tolbert and Charlene Suina's medical care on September 9 and 10, 2017.

3.     Policies and procedures that applied to the duties of the GIMC healthcare providers involved in Baby Rose Sky Tolbert and Charlene Suina's medical care on September 9 and 10, 2017.

4.     History of complications, still births, and deaths of babies at GIMC.

5.     Production of medical records, code sheet, and placenta delivered following the birth of Baby Rose Sky Tolbert.

*Id*. at 2.

25.     Plaintiffs noticed the GIMC Chief of Staff's deposition for July 29, 2021. *See* Ex. C at 1. The notice listed the following subjects for examination:

1.     Credentialing of GIMC providers involved in the care of Baby Rose Sky Tolbert and Charlene Suina.

2.     Rules and Regulations regarding code events.

3.      Review of incident that resulted in Baby Rose's Death.

4.      The "Declaration of James R. Lisko, M.D., Chief of Staff, Gallup Indian Medical Center" dated May 12, 2021.

*Id*. at 2.

26.     Plaintiffs noticed the IHS Acting Director's deposition for July 30, 2021. *See* Ex. D at 1. The notice listed the following subjects for examination:

1.      Allegations of the complaint regarding lack of quality healthcare being provided to Native people in I.H.S. hospitals nationally.

2.      Data showing the quality of care outcomes for I.H.S.'s Native patients over past 10 years.

3.      Why disparities in health outcomes exist for Native patients in I.H.S. hospitals and what needs to be done to improve and standardize the provision of quality healthcare for Native patients.

4.      Required to understand the prior and current reasons for disparity of quality outcomes for Native people within I.H.S. system of care

*Id*. at 2.

27.     On July 9, 2021, Plaintiffs served an Amended Deposition Notice for the IHS Acting Director that changed the deposition format from a remote Zoom deposition to an in-person deposition at a "location to be determined in Washington, D.C." *See* Amended Notice and Subpoena for IHS Acting Director, attached as Ex. F, at 1.

28.     In addition, all of the deposition notices instructed the deponents to bring the following documents to their depositions:

1.      Any notes and documents you have made concerning Charlene Suina and/or Rose Tolbert or this case;

2.      Copies of all electronic or written communications you have had with anyone other than your lawyer regarding Charlene Suina and/or Rose Tolbert.

3.      Any documents related to the subjects stated above.

4.  Any documents that you have reviewed concerning Charlene Suina and/or Rose Tolbert or this case that may be referenced in your deposition.

5.  Most recently updated professional resume or curriculum vitae concerning your qualifications.

6.  A complete copy of your professional licensure file.

Ex. B at 3; Ex. C at 3; Ex. D at 3; Ex. F at 3.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 45(d)(1) imposes a duty on the party or attorney issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," as well as a duty on the Court to "enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." Federal Rule of Civil Procedure 45(d)(3)(A) requires the Court to quash a subpoena that "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." "The party . . . moving to quash a subpoena has the burden to demonstrate good cause and/or privilege to be protected." *Morales v. E.D. Etnyre & Co.*, 228 F.R.D. 694, 696 (D.N.M. 2005) (Browning, J.).

Rule 26(c) of the Federal Rules of Civil Procedure provides the Court with broad discretion, for good cause shown, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This discretion includes orders forbidding the requested discovery altogether. *Id*. R. 26(c)(1)(A). The party seeking the protective order bears the burden of showing good cause. *See New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 429 F. Supp. 3d 996, 1007 (D.N.M. 2019) (Browning, J.).

**ARGUMENT**

I.    **No Extraordinary Circumstances Exist to Justify Depositions of the Government Officials, Who Lack Unique Personal Knowledge Relevant to This Case.**[4]

Because of the potential for abuse, many courts have limited the ability of a party to depose high-level government officials and corporate executives pursuant to the "apex doctrine." *See, e.g.*, *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, 329 F.R.D. 694, 696 (D.N.M. 2019), *objections overruled*, 2019 WL 1487241 (D.N.M. Apr. 4, 2019). "Absent extraordinary circumstances, high-level government officials should not be called to testify in federal court about their official actions." *Denver Homeless Out Loud v. Denver, Colorado*, No. 20-CV-2985-WJM-SKC, 2020 WL 7230641, at *1 (D. Colo. Dec. 8, 2020); *accord In re F.D.I.C.*, 58 F.3d 1055, 1060 (5th Cir. 1995) (holding that the district court abused its discretion when it "made no attempt to find exceptional circumstances" before denying a motion to quash deposition notices issued to high-level government officials). To determine if extraordinary circumstances exist, courts consider whether the official has unique personal information essential to the case that could not be obtained from a less burdensome source. *See Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007).

"Although no uniform test exists, district courts in this circuit have required parties seeking to depose high-ranking government officials to demonstrate whether (1) the official has first-hand knowledge related to the claim being litigated, (2) the testimony will likely lead to the discovery of admissible evidence, (3) the deposition is essential to the party's case, and (4) the information

---

[4] The United States has standing to contest the subpoenas to the Government Officials because it has a legitimate interest in protecting its employees from undue burdens and protecting information covered by the IHS medical quality assurance privilege from discovery. *See Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.*, No. CIV 03–1185 JB/LFG, 2007 WL 2296916, at *1 (D.N.M. June 26, 2007) (Browning, J.) (noting that a party can challenge a subpoena addressed to a nonparty "if the subpoena infringes upon the movant's legitimate interests" (internal quotation marks omitted)).

cannot be obtained from an alternative source or via less burdensome means." *Fed. Trade Comm'n v. Nudge, LLC*, No. 2:19-CV-00867-DBB-DAO, 2020 WL 6827682, at *2 (D. Utah Nov. 20, 2020) (internal quotation marks and brackets omitted); *see also Carter v. Att'y Liab. Prot. Soc'y*, No. 08-CV-273-B, 2009 WL 10453674, at *2 (D. Wyo. Sept. 25, 2009) (applying the apex doctrine to a "senior corporate executive"). The party seeking the deposition has the initial burden to show that the official has unique personal knowledge of relevant issues. *See Tierra Blanca Ranch High Country Youth Program*, 329 F.R.D. at 697-98 (quoting *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-CV-01528-REB-KLM, 2011 WL 2535067, at *1-2 (D. Colo. June 27, 2011)). If the party meets that initial burden, the burden shifts to the official or executive to demonstrate that he lacks unique personal knowledge or that other circumstances exist that would render the deposition inappropriate. *See id.*

## A.     The Apex Doctrine Applies Because the Government Officials Are High-Ranking Government Officials or the Equivalent of Senior Executives.

Here, Plaintiffs seek to depose the Acting Director of IHS,[5] a federal agency within the U.S. Department of Health and Human Services ("HHS") delivering health care to 2.6 million American Indians and Alaska Natives. *See* About IHS, *available at* https://www.ihs.gov/aboutihs/ (last visited July 9, 2021). The IHS has over 15,000 employees and a budget of $6 billion. *See* IHS Profile, *available at* https://www.ihs.gov/newsroom/factsheets/ihsprofile/ (last visited July 9, 2021). The IHS Director reports to the Secretary of HHS. *See* HHS Organizational Chart, *available at* https://aspe.hhs.gov/system/files/pdf/176966/hhsplanappE.pdf (last visited July 9, 2021). The

---

[5] Plaintiffs' deposition notice named Michael Weahkeen [*sic*], who is no longer the IHS Director. The United States presumes that Plaintiffs seek to depose the current Acting Director, Elizabeth Fowler. However, even if Plaintiffs seek to depose Mr. Weahkee, the apex doctrine also applies to former government officials. *See, e.g.*, *K.C.R. v. Cty. of Los Angeles*, No. CV 13-3806 PSG SSX, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) ("Executives and high-ranking officials continue to be protected by the apex doctrine even after leaving office.").

Secretary of HHS, in turn, is a cabinet-level official who reports to the President. *See* The Cabinet, *available at* https://www.whitehouse.gov/administration/cabinet/ (last visited July 9, 2021).

Courts routinely apply the apex doctrine to current and former government officials reporting directly to cabinet members, as well as those at high levels within their agencies. *See, e.g.*, *RI, Inc. v. Gardner*, No. CV 10-1795 LDW ETB, 2011 WL 4974834, at *2 (E.D.N.Y. Aug. 11, 2011) (applying the apex doctrine to the Solicitor of Labor, who reports to the Secretary of Labor); *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 321 (D.N.J. 2009) (applying apex doctrine to a former EPA regional administrator, who reported to the EPA Administrator, who in turn reported to the President); *see also Low v. Whitman*, 207 F.R.D. 9, 12 (D.D.C. 2002) (applying apex doctrine to the Deputy Chief of Staff to the EPA Administrator); *Cavanaugh v. Wainstein*, No. CIV.A.05-123(GK), 2007 WL 1601723, at *12 (D.D.C. June 4, 2007) (holding that a Deputy Assistant Attorney General was a high-level government official subject to the apex doctrine). Accordingly, the Court should conclude that the Acting Director of IHS is a high-ranking government official to whom the apex doctrine applies.

While GIMC's Chief of Staff and Administrator are concededly not at the apex of the IHS, they are more akin to corporate executives running a busy hospital. GIMC is a 99-bed hospital with 5,800 inpatient admissions and 250,000 outpatient encounters each year. *See* Gallup Indian Medical Center, *available at* https://www.ihs.gov/navajo/healthcarefacilities/gallup/ (last visited July 9, 2021). It has the largest staff of all IHS facilities serving the Navajo Area. *See id.* Courts have applied the apex doctrine to high-ranking officials at facilities such as medical centers or prisons. *See, e.g.*, *Branch v. State Univ. of New York*, No. 18CV09516 (AT) (DF), 2020 WL 5603366, at *3 (S.D.N.Y. Sept. 17, 2020) (denying motion to compel deposition of the president of a medical center in light of his "undisputed high rank"), *aff'd*, 2021 WL 2157823 (S.D.N.Y.

May 27, 2021); *Warren v. Washington*, No. C11-5686 BHS/KLS, 2012 WL 2190788, at *2 (W.D. Wash. June 14, 2012) (deeming the superintendent of a prison a "high ranking official" subject to the apex doctrine). Therefore, the Court should apply the apex doctrine to the GIMC officials.

**B.    Plaintiffs Cannot Show That the Government Officials Have Unique Personal Knowledge Relevant to this Case.**

Under the apex doctrine, Plaintiffs must make a prima facie showing that the Government Officials have unique personal knowledge of the issues in this case. However, none of the Government Officials had any personal involvement in the care of Plaintiff Suina or Baby Tolbert. Indeed, the only reason Plaintiffs have provided as to why they want to depose these "administrative witnesses" is to "explore" the remaining negligent credentialing claim.[6]  Doc. 119 at 7. While the Court did rule that "Plaintiffs' negligent credentialing and privileging claims may proceed on a limited basis under the I.H.M.'s mandatory licensure requirements," Doc. 117 at 9, Plaintiffs cannot show that any of the Government Officials has any unique personal knowledge relating to whether the doctors satisfied these requirements.

The only Government Official whom Plaintiffs seek to question about credentialing is the GIMC Chief of Staff. *See* Ex. C at 2. To be sure, GIMC's Chief of Staff is responsible for GIMC's compliance with the IHM's credentialing requirements. *See* Doc. 135-10 at 2. The sole mandatory requirement set forth in the IHM is an active, unrestricted medical license. *See Begay v. United States*, No. CIV 15-0358 JB/SCY, 2016 WL 6394925, at *31 (D.N.M. Sept. 30, 2016). Plaintiffs have conceded that "[d]uring the depositions of Defendant's witnesses – the medical providers involved in the care of Plaintiff Charlene Suina and Baby Rose Sky Tolbert . . . testified about credentialing [and] privileging." Doc. 84 at 7-8. Plaintiffs have also acknowledged that they

---

[6] Tellingly, Plaintiffs cannot even identify these witnesses by name (or the correct name in the case of the IHS Director).

questioned the providers about their licenses. *See* Doc. 139 at 5. Moreover, information about licensure status is publicly available, as evidenced by the fact that Plaintiffs already knew where various doctors were licensed and the status of their licenses back in September 2020. *See* Doc. 53 at 15 (describing the licensure status of Dr. Alvarez-Colon, Dr. Leach, Dr. Lynch, and Dr. Rubaii); Doc. 60 at 48:13-24 (noting that Dr. Lynch "appears to be licensed in Illinois" but "doesn't have [a] restriction" on her license). Consequently, Plaintiffs cannot show that the GIMC Chief of Staff has *unique* personal knowledge as to the licensure status of these providers or that they cannot obtain information about the doctors' licensure status through other less burdensome means. *See Carter*, 2009 WL 10453674, at *2 ("[T]he unique personal knowledge must be truly unique—the deposition would not be allowed where the information could be had through interrogatories, deposition of a designated spokesperson, or deposition testimony of other persons." (internal quotation marks omitted; alteration in original)).

Plaintiffs seek to depose the GIMC Administrator on topics unrelated to credentialing under the IHM. *See* Ex. C at 2. One of the proposed topics is the "hiring of the GIMC healthcare providers involved in Baby Rose Sky Tolbert and Charlene Suina's medical care." *Id*. However, the Court dismissed the negligent hiring claim as barred by the discretionary function exception. *See* Doc. 117 at 6 n.3. Another proposed topic—"[h]istory of complications, still births, and deaths of babies at GIMC," Ex. C at 2—appears to relate to the punitive damages claim, which the Court also dismissed, *see* Doc. 117 at 10. Moreover, Federal Rule of Evidence 404 would bar the use of unrelated adverse events at GIMC from being introduced at trial to prove negligence in this litigation.

The remaining proposed topics do not appear to implicate any unique personal knowledge of the Administrator. For example, the Administrator is not responsible for producing medical

records to the parties. Rather, the GIMC medical records department is the office which releases information to parties that request it. And each department at GIMC is responsible for developing its own policies and procedures for healthcare employees within the department. In essence, Plaintiffs presume the GIMC Administrator has knowledge of numerous topics regarding GIMC as an entity without laying an appropriate foundation for such a presumption. The appropriate mechanism to request deposition testimony for such information is Fed. R. Civ. P. 30(b)(6), which enables the Government to identify the witnesses who have personal knowledge of the topics requested.

Finally, the deposition notice for the Acting Director does not even list any topics relating to Plaintiff Suina, Baby Tolbert, or the doctors who provided their care. *See* Ex. D at 2. All of the topics relate to the allegedly substandard care provided by the IHS in general, likely in an effort to explore Plaintiffs' claim that the FTCA is unconstitutional or their claim for punitive damages. *See* Doc. 1 ¶¶ 54-55. The Court has rejected these claims, however. *See* Doc. 117 at 10-11. Accordingly, there are no claims in this case to which these topics might plausibly relate. Because the Acting Director was not involved in any of the events giving rise to Plaintiffs' claims, she lacks any personal knowledge—much less unique personal knowledge—that would justify taking her deposition and forcing Government counsel to travel to Washington, D.C. to defend the deposition.

None of the three Government Officials has unique personal knowledge because they were not involved in the medical care giving rise to the Complaint. *See, e.g.*, *Tierra Blanca Ranch High Country Youth Program*, 329 F.R.D. at 698 (concluding that officials lacked unique personal knowledge because they did not participate in the incident and at most, sat in on meetings or received second-hand information relating to the incident). To the extent the GIMC Chief of Staff has personal knowledge of the doctors' licensure status, Plaintiffs cannot show that such

knowledge is unique to him given that it is available from the medical licensing boards' websites, and Plaintiffs deposed the doctors about their licenses. *See, e.g.*, *Black Card, LLC v. VISA U.S.A., Inc.*, No. 15-CV-027-S, 2016 WL 7325665, at *3 (D. Wyo. Dec. 12, 2016) (concluding that the information sought by the plaintiff was available from lower-level employees and through "less intrusive discovery methods such as interrogatories or deposition upon written questions"). Because Plaintiffs cannot satisfy their initial burden under the apex doctrine of showing that the Government Officials have unique personal knowledge, good cause exists to quash the subpoenas.

## II. Even If the Apex Doctrine Does Not Apply, the Court Should Prohibit or Limit the Depositions of the Government Officials.

Even if the Court declines to apply the apex doctrine, good cause still exists to quash the subpoenas or enter a protective order prohibiting or limiting the Government Officials' Depositions. "A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *Whiteside v. State Farm Fire & Cas. Co.*, No. 1:20-CV-01210-JAP-LF, 2021 WL 1390805, at *3 (D.N.M. Apr. 13, 2021) (internal quotation marks omitted). Rule 26 limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court is required to limit the frequency or extent of discovery that "is outside the scope permitted by Rule 26(b)(1)," "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id*. R. 26(b)(2)(C).

With respect to the Acting Director of IHS, Plaintiffs cannot show that the quality of healthcare at IHS facilities in general is relevant to their claim that the doctors and nurses at GIMC were negligent in their care of Plaintiff Suina and Baby Tolbert. Hence, a seven-hour deposition of the Acting Director of IHS is hardly proportional to the needs of this case. Furthermore, to the extent Plaintiffs seek information about the quality of care at IHS facilities, it is publicly available

16

from sources such as reports by the Government Accountability Office and the HHS Office of Inspector General.

As for the GIMC Chief of Staff, Plaintiffs seek to discuss topics such as credentialing of the providers and the review of Baby Tolbert's death. *See* Ex. C at 2. However, the Chief of Staff is not permitted to testify about these topics, since they are covered under 25 U.S.C. § 1675's prohibition on testimony about medical quality assurance records and activities. *See* 25 U.S.C. § 1675(c)(2). As the United States has already explained in response to Plaintiffs' First Motion to Compel, records relating to credentialing and incident reviews fall squarely within the IHS medical quality assurance statute's definition of medical quality assurance records. *See generally* Docs. 94, 99-1. "The Court is required to quash a subpoena that will result in 'disclosure of privileged or other protected matter [where] no exception or waiver applies.'" *Chavez v. City of Farmington*, No. CV 15-171 JCH/SCY, 2015 WL 13659473, at *2 (D.N.M. Aug. 18, 2015) (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii)). Plaintiffs also wish to ask him about rules and regulations governing code events. However, the United States has already provided all of GIMC's written policies regarding code events in discovery, *see* Doc. 99-1 at 27-29, and Plaintiffs have already deposed seven members of the code team, *see* Doc. 113 at 12-13. Another deposition would be duplicative. The final topic listed by Plaintiffs is the declaration provided by the Chief of Staff in support of the United States' Motion to Dismiss or Motion for Partial Summary Judgment on Plaintiffs' Negligent Credentialing Claim (Doc. 135). *See* Doc. 135-10. While the United States does not dispute the relevance of such questioning, the Chief of Staff is prohibited by statute from testifying about the credentialing process and files, or his review of them. *See* 25 U.S.C. § 1675(c)(2). Therefore, deposing him would be a fruitless endeavor.

Finally, with regard to the GIMC Administrator, Plaintiffs' inquiry into hiring practices is no longer relevant because the Court dismissed their negligent hiring claim. *See* Doc. 117 at 6 n.3. While Plaintiffs also wish to discuss policies and procedures applicable to the care provided to Plaintiff Suina and Baby Tolbert, they have already obtained all of the relevant policies and procedures through discovery. *See* Doc. 99-1 at 27-29 (detailing policies provided by the United States). Plaintiffs have also had the opportunity to depose numerous medical providers about these policies. *See, e.g.*, Doc. 132 at 6 (describing maternal transfer policy and citing deposition testimony in support of Plaintiffs' Motion for Summary Judgment). Plaintiffs also want to ask questions about the "[h]istory of complications, still births, and deaths of babies at GIMC," but discovery into unrelated incidents covering an unlimited time period is neither relevant nor proportional to the needs of this case, especially given the dismissal of the punitive damages claim. *See, e.g.*, Doc. 104 at 7-9 (opposing Plaintiffs' Second Motion to Compel production of information relating to a stillbirth occurring a year after Baby Tolbert's death). Moreover, 25 U.S.C. § 1675(c)(2) would bar this testimony to the extent it relates to findings from any medical quality assurance records or proceedings, and Federal Rule of Evidence 404 would bar the information from being used at trial to establish negligence in this case.

Given that Plaintiffs' topics relate to dismissed claims, privileged and nondiscoverable information, or information already probed in other depositions, good cause exists to quash the depositions or enter a protective order regardless of whether the apex doctrine applies. Therefore, the Court should prohibit or limit the Government Officials' depositions.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court quash the subpoenas or issue a protective order preventing Plaintiffs from deposing the Government Officials.

Respectfully Submitted,

FRED J. FEDERICI
Acting United States Attorney

*/s/ Elizabeth M. Martinez 7/9/21*
ELIZABETH M. MARTINEZ
CHRISTINE LYMAN
KIMBERLY BELL
Assistant United States Attorneys
P.O. Box 607
Albuquerque, New Mexico 87103
(505) 224-1469 | (505) 224-1532
elizabeth.martinez@usdoj.gov
christine.lyman@usdoj.gov
kimberly.bell@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2021, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Elizabeth M. Martinez 7/9/21*
ELIZABETH M. MARTINEZ
Assistant United States Attorney